56 Wn.2d 412 (1960)
353 P.2d 412
THE STATE OF WASHINGTON, on the Relation of Ralph James Alldis, Respondent,
v.
THE BOARD OF PRISON TERMS AND PAROLES, Appellant.[1]
No. 34677.
The Supreme Court of Washington, En Banc.
June 30, 1960.
*413 The Attorney General and Stephen C. Way, Assistant, for appellant.
Archie Baker (of Baker, Mardesich & Griffin), for respondent.
ROSELLINI, J.
This case presents for the first time the question of the responsibility of the parole board under that portion of RCW 9.95.040, which provides as follows:
"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:
"(1) For a person not previously convicted of a felony but armed with a deadly weapon either at the time of the commission of his offense, or a concealed deadly weapon at the time of his arrest, the duration of confinement shall not be fixed at less than five years."
On May 31, 1955, the respondent pleaded guilty to a charge of second-degree burglary in the superior court of Thurston county. The court deferred imposition of sentence and placed him on probation for a period of three years. After being on probation for little more than one year, the respondent conceived the idea that to rob a house of prostitution would not be considered a crime.
In pursuance of this novel concept of the law, on the night of August 11, and again on October 6, 1956, the respondent, with an accomplice, committed robberies in the city of Aberdeen.
On October 10, 1956, respondent was charged by information in Grays Harbor county superior court with the crime of robbery. Subsequently, on October 24, 1956, an amended information was filed charging him with the crime of grand larceny.
On respondent's plea of guilty to the crime of grand larceny, he was sentenced by the superior court of Grays Harbor county to a term of confinement in the Washington State Reformatory for not more than fifteen years. On the 7th day of February, 1957, the prosecuting attorney of Thurston *414 county filed a petition to set aside the deferral of sentence granted the respondent upon his conviction of burglary.
The petition alleged that:
"... The defendant stated and admitted that he owned the gun used in the robberies [of August 11, and October 6, 1956] and that he carried the gun during the robberies. At the time of his arrest, the defendant had the gun in the waistband of his trousers."
The respondent was served with a certified copy of the petition and was returned from the state reformatory to the superior court of Thurston county for the hearing on the revocation of probation and deferral of sentence.
The respondent was present in court; and the court, in its order revoking deferral of imposition of sentence, found that the facts set forth in the petition to set aside deferral of sentence were true. The respondent was thereupon sentenced to a maximum term of confinement of not more than fifteen years in the state reformatory.
The respondent personally appeared before the board of prison terms and paroles on four occasions and, each time, denied that he had used a deadly weapon in the commission of the crime for which he was convicted in Grays Harbor county. However, he finally admitted that at the time of his arrest, a .22 caliber revolver was in his car.
At the time the respondent's minimum sentence was fixed at eighteen months, he was advised by a member of the board that an investigation would be made to determine whether a deadly weapon had been used in the commission of the crime in Grays Harbor county, and if it were found that a weapon was used, he would again be called before the board for the fixing of a proper mandatory minimum sentence of five years.
As a result of the investigation, the following documents, all of which revealed that a deadly weapon had been used by the respondent in the commission of the crime, were placed before the board:
(1) Report of W.D. Bailey, who was the district parole and probation officer for Southwest Washington, an employee of the board of prison terms and paroles; (2) a statement *415 by the Thurston county prosecuting attorney; (3) the petition and order revoking deferral, filed in the Thurston county superior court; (4) a letter written by A.M. Gallagher, chief of police of Aberdeen; (5) the report of the two arresting officers of the Aberdeen police force; (6) a memorandum of W.D. Bailey, district parole and probation officer of Aberdeen, in which he recited the result of his interview with a victim of one of the robberies in Aberdeen.
After considering this evidence, the parole board fixed the respondent's minimum term at five years in compliance with the provisions of RCW 9.95.040.
The respondent contends that, by virtue of amendment 10, Art. I, § 22, of the state constitution, unless it is alleged in the information and stated in the judgment that the defendant was armed with a deadly weapon at the time of the offense, or with a concealed deadly weapon at the time of his arrest, the board cannot fix the mandatory five-year sentence provided for in RCW 9.95.040(1). The provision of amendment 10 relied upon grants to a defendant in a criminal prosecution the right to "demand the nature and cause of the accusation against him" and to have a copy thereof.
RCW 9.95.040 does not make being armed in the manner specified therein a separate crime, but simply a factor which will limit the power of the parole board in setting a minimum sentence.
The respondent pleaded guilty to the crime of grand larceny, and was sentenced to a maximum term of fifteen years, as provided by RCW 9.54.090.
[1] A convict is not entitled to obtain release from the state penitentiary or reformatory prior to the expiration of his maximum term unless the board of prison terms and paroles determines that he has been rehabilitated. In re Pierce v. Smith, 31 Wn. (2d) 52, 195 P. (2d) 112.
[2] A parole is not a right but a privilege to be granted or withheld as sound discretion may impel. It is sometimes regarded as a mere matter of grace. State ex rel. Linden v. Bunge, 192 Wash. 245, 73 P. (2d) 516.
In Ughbanks v. Armstrong, 208 U.S. 481, 52 L.Ed. 582, *416 28 S.Ct. 372, the supreme court was asked to examine the constitutionality of a Michigan statute which provided that no person who had been twice convicted of a felony should be eligible for parole. The petitioner had served his minimum sentence set by the trial court, and applied for a writ of habeas corpus when his application for parole was refused. The United States supreme court held that this statute did not deny the petitioner due process of the law, or equal protection of the laws, even though it made no provision for a hearing on the question of previous convictions. In regard to the privilege of parole, the court said:
"... As the State is thus providing for the granting of a favor to a convicted criminal confined within one of its prisons, it may (unless under extraordinary circumstances) attach such conditions to the application for, or to the granting of, the favor as it may deem proper, or it may in its discretion exclude such classes of persons from participation in the favor as may to it seem fit. If the State choose to grant this privilege to make application to the governor for a discharge upon parole in the case of one class of criminals and deny it to others, such, for instance, as those who have been twice convicted of a felony, it is a question of state policy exclusively for the State to decide, as is also the procedure to ascertain the fact, as well as the kind or amount of evidence upon which to base its determination. It is not bound to give the convict a hearing upon the question of prior conviction and a failure to give it violates no provision of the Federal Constitution."
[3] Inasmuch as RCW 9.95.040(1) does not define a crime but merely provides a condition of parole, we conclude that amendment 10 has no application, and the fact that a convict was armed in the manner described in that statute need not be alleged in the information or stated in the judgment.
[4] Nor do we think that the legislature contemplated that the parole board should rely exclusively upon the information, judgment and sentence in making its determination that an individual was thus armed. Normally, a fact such as this is not alleged unless it is an element of the crime charged.
In State v. Price, 173 Wash. 108, 21 P. (2d) 1038, we held *417 that an information which charges a crime substantially in the language of the statute is sufficient. If robbery is charged in the language of RCW 9.75.010, defining the crime, there will be no mention of a deadly weapon, yet the proof may show that such a weapon was used in the perpetration of the crime. In any event, it is most unlikely that the information or judgment would show that the defendant was carrying a concealed weapon at the time of his arrest, since this is in no way an element of the crime.
Thus, it is clear that it is not necessary nor even logical that the prosecutor should charge, or that a judgment should state, that the defendant was carrying a concealed weapon at the time of his arrest or was armed when he committed the felony unless such fact is an element of the crime charged.
All of the provisions of RCW 9.95.040(1) cannot be given effect unless we hold that the parole board is authorized to conduct its own investigation of the facts to determine whether the prisoner is subject to the mandatory five-year sentence. Otherwise, as a practical matter, the provision would apply only when the fact that a felon was armed with a deadly weapon, appears in the information or judgment; and the fact that the defendant was armed at the time of his arrest would not appear in these documents.
If it had been the intent of the legislature to thus limit the investigative powers of the board, plain language was available to state that intent. Such plain language is, in fact, used in other subdivisions where mandatory minimum sentences are prescribed for a person "convicted" of being an habitual criminal and a person "convicted" of embezzling funds from any institution of public deposit of which he was an officer or stockholder.
RCW 9.95.170 provides:
"To assist it in fixing the duration of a convicted person's term of confinement, prescribing treatment for such person while in confinement and supervising and regulating his or her activities while on parole, it shall not only be the duty of the board of prison terms and paroles to thoroughly inform itself as to the facts of such convicted person's crime *418 but also to inform itself as thoroughly as possible as to such convict as a personality. The board of prison terms and paroles must, therefore, adopt and apply an effective technique of investigation to develop information for that purpose."
In In re Wyback v. Board of Prison Terms & Paroles, 32 Wn. (2d) 780, 203 P. (2d) 1083, this court, in interpreting this statute, held that the act contemplates that the board shall by nonjudicial processes gather information which may throw light upon the advisability of following a particular course with regard to an inmate.
RCW 9.95.030 requires that the sentencing judge and prosecuting attorney furnish the board of prison terms and paroles with a statement of all the facts concerning the convicted person's crime and any other facts relative to him. RCW 9.95.031 in addition provides that the prosecuting attorney must furnish a statement of all information in regard to the career of the prisoner, and all other facts which may throw light upon whether he can again become a good citizen. If the parole board may rely upon these sources in exercising its discretion in the fixing of a minimum sentence, there appears no sound reason why it should not rely upon them in fixing a minimum prescribed by the mandate of the legislature.[2]
*419 The legislature in enacting RCW 9.95.040  fixing a mandatory five-year minimum sentence for a person who is armed with a deadly weapon at the time of the commission of his offense, or a concealed deadly weapon at the time of his arrest  must have had in mind that a person so armed is likely to harbor the intent to use such weapon if he finds it necessary in the perpetration of his crime, or in making his escape, and that the danger of physical harm to a victim, under such circumstances, is imminent. Having recognized the probable propensities of such a felon, the legislature, in the proper exercise of its discretion, determined that he should not be eligible for the privilege of parole until he had served his mandatory sentence. If that decision was not a wise one, it should be corrected through the legislative process and not by the courts.
*420 In the instant case the defendant admitted that he had a gun at the time he was arrested; he does not deny the fact found by the Thurston county court that he used a gun in the commission of the crime. Consequently, the board of prison terms and paroles had no choice but to impose the minimum sentence prescribed by statute.
The judgment is reversed.
MALLERY, HILL, DONWORTH, OTT, and FOSTER, JJ., concur.
WEAVER, C.J., FINLEY, and HUNTER, JJ., concur in the result.
NOTES
[1] Reported in 353 P. (2d) 412.
[2] It will be noted (RCW 9.95.170) that the purpose of the board, to assist in "prescribing treatment for such person while in confinement and supervising and regulating his or her activities while on parole," places emphasis on the reformation of the prisoner, and is in accord with the modern trend. An article by Professor Ernest W. Burgess, on Parole and the Indeterminate Sentence, is quoted in part in 31 Iowa L. Rev. 213, 215:

"`There can be no doubt that the indeterminate sentence ranging in time from confinement of thirty days to life would give the greatest protection to society.... The philosophy behind the indeterminate sentence is that the punishment should be made to fit the offender rather than the crime. Theoretically, under the philosophy of the indeterminate sentence, the word "treatment" should be substituted for the word "punishment," and a person found guilty of any crime, a misdemeanor as well as a felony, should be considered as "socially sick"; his case should be studied thoroughly in order to find out the causes for his criminality; once a diagnosis has been made, then a plan of treatment should be worked out and put in practice; the man should be released from the place of confinement as soon as, but not before, the specialists are convinced that he could safely be returned to society.'"
Although it is recognized that the confinement of a convicted felon has other aspects (the punishment for a wrongful act; the protection of the public from further depredation by the criminal; and the deterring of others from committing similar crimes), the reformation of the criminal and his restoration to society as a law-abiding citizen, is the ultimate goal.
Dr. Norman S. Hayner, a former member of the Washington state board of prison terms and paroles, in The Journal of Criminal Law, Criminology and Police Science (Vol. 49, No. 4, p. 335, November-December 1958), says:
"The procedure followed in setting the sentence begins with a careful study by all board members of the file on the man or woman whose minimum term must be fixed. This file includes detailed information on any prior felony committed in the state of Washington. There are also the prosecutor's statement and the `F.B.I.' mentioned above. In addition there is a 7-15 page `admission summary' prepared by the staff of the R. and G. [Reception and Guidance] Unit. Included in this summary are data on the developmental history, personality characteristics, vocational status and, in selected cases, a psychiatric evaluation. There is often a statement by the defense lawyer. There may be letters from relatives and friends and written reports on interviews with them...."
If the parole board is to make its determination properly, it is obvious that it must have all the facts concerning the individual's past and present conduct, and cannot be confined to those facts which appear in the information or indictment and in the judgment.