[No. 38407.   Department Two.   August 25, 1966.]

THE STATE OF WASHINGTON, *Plaintiff*, v. DENNIS COMA, *Petitioner*, GEORGE F. PARKS *et al.*, *Respondents.**

*Jack L. Burtch* (of *Kirkwood & Burtch*), for petitioner.

*The Attorney General* and *Stephen C. Way, Assistant,* for respondents.

FINLEY, J.—This petition for a writ of certiorari is based upon only one proposition of law; namely, that the Washington State Board of Prison Terms and Paroles was not required to impose a mandatory minimum sentence in the absence of a specific finding by a trial judge or a special verdict by a jury indicating that the petitioner was armed with a deadly weapon at the time of the commission of the crimes charged in the information.

The question as to the scope of the Board's authority in this instance arose out of the following sequence of events.

The petitioner, Dennis Coma, was charged on two counts of assault by information filed in superior court stating:

COUNT I. That on or about the 20th day of November,

*Reported in 417 P.2d 853.

1963, in Grays Harbor County, in the State of Washington, DENNIS COMA then and there being did then and there wilfully, unlawfully and feloniously assault one Harley Hart, with a weapon or instrument likely to cause bodily harm, to-wit: *with a 38 caliber revolver,* by pointing the revolver at and threatening to kill the said Harley Hart. (Italics ours.)

COUNT II. That on or about the 20th day of November, 1963, in Grays Harbor County, in the State of Washington, DENNIS COMA then and there being did then and there wilfully, unlawfully and feloniously assault one Robert Irwin with a weapon or instrument likely to cause bodily harm, to-wit: *with a 38 caliber revolver,* by pointing the revolver at and threatening to kill the said Robert Irwin. (Italics ours.)

The charges stemmed from the following dramatic events. These occurred in the early morning of November 20, 1963, when the petitioner burst into the Hoquiam Police Station, carrying a loaded rifle, disarmed three police officers (including Harley Hart and Robert Irwin), and demanded the release of a prisoner by the name of Lee Harmon. The petitioner then discarded the rifle and, seizing Hart and Irwin's police revolvers, began cocking and uncocking the pistols in an attempt to coerce the officers into complying with his desires—which later turned out to be the shooting of the sought-after prisoner. Fortunately, the Sheriff of Grays Harbor County, Richard Simmons, was able to disarm petitioner Coma before he injured anyone. It should be noted that Sheriff Simmons' performance exemplifies the efficient, effective, and oftentimes courageous work performed, somewhat routinely, by our law enforcement officers in the line of duty, and too frequently with little or no public recognition, commendation, or praise.

The petitioner entered a plea of not guilty as to both counts mentioned above. The case was tried before a jury, which, upon evidence and testimony submitted by the state and the defendant, returned a written verdict of "*guilty as charged on both counts.*" The jury was not so instructed and did not return a special verdict as to whether petitioner was armed with a deadly weapon (as defined by law) at

the time of the commission of the crime. Judgment and sentence were entered by the court pursuant to the verdict, sentencing the defendant to maximum terms of confinement of not more than 10 years on each count, with the sentences to be served concurrently. Although the formal or written judgment and sentence do not reflect the entry of a special verdict by the jury; nevertheless, the judgment does indicate that the defendant was found guilty by the jury "of the crime of Second Degree Assault on Two Counts *as charged in the Information.*" (Italics ours.)

Subsequently, the Washington State Board of Prison Terms and Paroles, ostensibly pursuant to the provisions of RCW 9.95.040 and RCW 9.95.015, fixed the minimum "duration of confinement" of Dennis Coma at 5 years. This is the mandatory minimum sentence prescribed by the statute for first offenders if armed with a deadly weapon in the commission of certain offenses. It is the petitioner's contention that, absent a special verdict by judge or jury, the Board was not required or empowered to make an independent finding respecting the use of a deadly weapon; and that the Board was not required to impose the mandatory sentence of 5 years.

It seems reasonably apparent that the Board of Prison Terms and Paroles assumed that it was compelled to impose the mandatory minimum sentence, since the information charged commission of the crime "with a 38 caliber revolver," and the written verdict of the jury indicated that the petitioner was "guilty *as charged* on both counts." (Italics ours.) The problem presented by this petition to review the Board's action is one of statutory interpretation. The pertinent statute, RCW 9.95.040, reads:

> Within six months after the admission of a convicted person to the penitentiary, reformatory, or such other state penal institution as may hereafter be established, the board of prison terms and paroles shall fix the duration of his confinement. The term of imprisonment so fixed shall not exceed the maximum provided by law for the offense of which he was convicted or the maximum fixed by the court where the law does not provide for a maximum term.

The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

(1) *For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.*

(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

The words "deadly weapon," as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas. (Italics ours.)

In *State ex rel. Alldis v. Board of Prison Terms & Paroles,* 56 Wn.2d 412, 353 P.2d 412 (1960), we attributed to the Board a fact-finding investigatory power in order to give full effect to the provisions of RCW 9.95.040(1) which *then* read:

(1) For a person not previously convicted of a felony but armed with a deadly weapon either at the time of the commission of his offense, *or a concealed deadly weapon at the time of his arrest,* the duration of confinement shall not be fixed at less than five years. (Italics ours.)

The above italicized provisions would have been nugatory unless the Board was empowered to make its own investigation of the facts, since as a practical matter the information, verdict and judgment often would not reflect the fact that the convicted offender was armed with a deadly weapon unless that fact was an element of the crime charged. It is certainly highly probable that the record before the Board would *not* reflect the presence of a concealed weapon *at the time of arrest.*

By chapter 138 of the Laws of 1961 the legislature amended the pertinent portion of RCW 9.95.040 to read:

(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

Consequently, the presence of a concealed weapon at the time of arrest is no longer a basis for imposition of a mandatory minimum sentence. Thus, while our decision in *Alldis* was appropriate at the time, a substantial part of our reasoning therein is no longer pertinent with respect to the scope, if any, of the Board's power to make independent findings of fact.

In addition, chapter 138, Laws of 1961, contains the following provision which is now codified as RCW 9.95.015:

Finding of fact or special verdict establishing defendant armed with deadly weapon. In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime.

█ Read literally, this statutory provision is susceptible of one or the other of two divergent interpretations. Either (1) it provides an exclusive formula or procedure for determining whether a deadly weapon was used; namely, by either a specific finding of the court or by special jury verdict; or, (2) it provides a further *aid* to the Parole Board in this respect, and is simply a gloss upon or an addition to the powers attributed to the Board in *Alldis, supra.* Thus, by resorting solely to the words utilized in RCW 9.95.015, the meaning of the statute is dubious and unclear, and

"ambiguity" is the crucial characterization. This, of course, encourages and permits resort to extrinsic aids—*i.e.*, the legislative history of RCW 9.95.015—in order to properly interpret and apply its provisions. *State ex rel. Public Util. Dist. No. 1 of Skagit Cy. v. Wylie*, 28 Wn.2d 113, 182 P.2d 706 (1947); *Scouten v. City of Whatcom*, 33 Wash. 273, 74 Pac. 389 (1903).

It is petitioner's contention that RCW 9.95.015 provides the *exclusive* procedure for determining whether a convicted defendant was armed with a deadly weapon. In other words, the petitioner argues that in the absence of a special verdict by the jury, or a specific finding of fact by the trial judge in a nonjury case, the Board is not required to impose the mandatory minimum sentences prescribed in RCW 9.95.040. The petitioner readily concedes that his interpretation is not the only possible interpretation of RCW 9.95.015 and RCW 9.95.040; but he contends that such a construction is overwhelmingly supported by the legislative history of the two enactments involved.

Presumably, no citation of authority is required for the proposition that we are attempting to deduce the "intention of the legislature" in our construction, interpretation and application of legislative enactments. By the same token we should, with some candor, concede that the use of the phrase, the "intention of the legislature," is, at best, an ephemeral generalization, descriptive of the decision-making process whereby we attempt to give judicial effect to written expressions of purpose and policy by the legislative branch.

Legislative interpretation problems arise, naturally, from the frailties and uncertainties of language and the inherent difficulties in attempting to convey an idea (in this instance, a mandate of the legislature) by means of written or oral verbalizations. The state contends that the meaning and purpose of chapter 138, Laws of 1961, is plain and clear. In essence, it is the state's argument that the legislature would have used words indicating the exclusiveness of the special verdict procedure if that had been its intention. The paradox present in all questions of statutory interpretation is that language, "crystal clear" to one litigant, inevitably is char-

acterized as "obscure and ambiguous" by the opposing party —or, even "crystal clear" in its support of an opposite result! This obviously suggests that frequently there is an inherent ambiguity in even the most precisely drafted statutes, and that litigants or the affected segments of the body politic are seldom, if ever, in agreement as to the so-called "intention of the legislature."

In the instant case the petitioner urges that we accept and utilize extrinsic evidence which he has marshaled in the form of legislative history in our interpretation and application of RCW 9.95.015. If we were to agree with the state's contention that it was not the legislature's intention to restrict or abrogate the fact-finding investigatory power of the Board, we would no doubt have stated that the provisions of RCW 9.95.015 construed in conjunction with RCW 9.95.040, as amended, were "clear and unambiguous." But see Sutherland, Statutes and Statutory Construction, § 4502 (3d ed. Horack 1943), wherein it is stated:

> Thus, the assertion that a statute which is "clear and unambiguous" needs no interpretation is, in fact, evidence that the court has considered the meaning of the statute and reached a conclusion on the question of legislative intention. In many instances this will be a proper conclusion, but frequently it merely disguises the court's unwillingness to consider evidence other than the court's own impression of what the legislative intent is. Courts should not lose sight of the fact that statutory interpretation, whatever it may be called so far as the function of courts and juries is concerned, is a fact issue. *Where available, the courts should never exclude relevant evidence on that issue of fact.* (Italics ours.)

As previously mentioned, we are convinced that the literal meaning of the statute is dubious and unclear. In the light of such ambiguity, resort to legislative history is not only permissible but necessary as an aid to us in determining the purpose of the enactment, *i.e.*, the so-called "intent of the legislation." Realistically, whatever might have been our conclusion as to the literal meaning, the clarity or nonclarity of RCW 9.95.015, the persuasive support for appellant's interpretation of the enactment, so obvious in the

legislative history of chapter 138 of the Laws of 1961, should not and cannot be ignored. The original precipitant for the enactment of chapter 138 was a letter dated February 16, 1956, from Dr. Norman S. Hayner (who at that time was chairman of the Board of Prison Terms and Paroles) to the Legislative Council's Subcommittee on Public Institutions, wherein he stated:

There is only one new recommendation which the Board would like to make to the Subcommittee. As the situation has been decided for us by written opinions from the attorney general's office, it is now up to the parole board to determine whether or not an individual was armed with a deadly weapon at the time of the commission of his offense or had a concealed deadly weapon at the time of his arrest. What we would prefer would be to have the Superior Courts of the State of Washington follow the plan used in California where the fact of the presence or absence of a deadly weapon in the commission of the offense is established at the time of the trial. *In other words, we feel that it would be better jurisprudence if this fact were determined in court rather than by the Board.* We believe that it would be in the best interests of both the Board and the prosecutors if minimum sentences were mandatory only in cases where the use of the deadly weapon had been established during the trial. We discussed this matter recently with a special committee of the Washington Association of Prosecuting Attorneys and that committee seemed to favor our proposal. (Italics ours.)

The minutes of the meeting of the Subcommittee on Public Institutions, held on February 25, 1956, state that:

Dr. Hayner had the following recommendations to make: 1. Require that the court find whether or not a deadly weapon was used in a particular crime. Now it may be that the information charged a deadly weapon was used, but in fact it may have been a toy pistol. *It should not be up to the Parole Board to decide whether it was a toy pistol or a real gun; it is a court's function.* Present construction of the statutes apparently do not require that the court make this decision and allow the Parole Board to make such a finding and consider it in its sentence—(the Parole Board must set the mandatory minimum if it determines that a deadly weapon is used). (Italics ours.)

A bill was subsequently drafted in an attempt to effectuate the desires and recommendations of Dr. Hayner. The proposed measure was introduced at the 35th Legislative Session as Senate Bill 81, and at the 36th Legislative Session as House Bill 79. The pertinent provisions of these measures contain language substantially similar to the present language of RCW 9.95.015, but the bills were not enacted into law.

Thereafter, our decision was filed in *State ex rel. Alldis v. Board of Prison Terms & Paroles, supra,* in which, as mentioned above, we held that the Board was empowered to conduct its own investigation of a particular case in order to determine whether or not a person convicted of a felony was armed with a deadly weapon at the time of the commission of his offense. According to the affidavit of Robert A. Seeber, formerly legal counsel for the State of Washington Legislative Council, and legal adviser to the Subcommittee on State Institutions and Youth Control, the *Alldis* decision was reported by the affiant to that subcommittee, and the subcommittee recommended introduction for the *third* time of the aforementioned legislation.

The measure was introduced at the 37th Legislative Session as Senate Bill 11, and was enacted into law as chapter 138 of the Laws of 1961. The legislation was originally contained in a recommendation of the Legislative Council, which set out the following notation of purpose in the preamble:

*Purpose: To place the determination of the deadly weapon issues upon the court or jury where the determination properly belongs since all the evidence can then best be presented and thus relieve the parole board from having to make this judicial determination.* The finding of the use of a deadly weapon requires that the board set a mandatory minimum term of five or seven and one-half years depending on the convicted person's previous criminal record. (Italics ours.)

We are convinced that the Board of Prison Terms and Paroles was not entitled to make an "independent finding" as to the use or non-use of a deadly weapon by the petitioner in his assault of two police officers. The state

argues that the special verdict procedure was substantially complied with, since the general verdict recites that the jury found Dennis Coma "guilty as charged on both counts" —and the previously quoted information charges him with assault with a .38 caliber revolver. But the language of RCW 9.95.015 and RCW 9.95.040, construed in the light of the above-outlined legislative history, was intended to and we think it does preclude any finding, even of this nature, by the Board of Prison Terms and Paroles.

█ It is our conclusion that the Board is not *required* to impose the mandatory minimum sentence in the absence of a specific finding by the trial judge or a special verdict by the jury. In fact, if the purpose of chapter 138 of the Laws of 1961, as amplified and indicated in the above-quoted legislative history materials, is to be observed, the Board should refrain from *any* consideration of the use or non-use of a deadly weapon in its administrative determination fixing the time to be served. Be that as it may, however, under the Board's general authority, and within the framework of the indeterminate sentencing statutes, the Board was entitled to exercise its discretion in setting Dennis Coma's minimum duration of confinement. Their determination in this respect might have been less than, equal to, or more than, the period prescribed as a mandatory minimum by RCW 9.95.040(1).

It seems clear from the record in this case that the Board was under the impression that it was required to impose the mandatory minimum sentence. Therefore, the writ of certiorari is granted, and the matter is remanded to the Washington State Board of Prison Terms and Paroles for reconsideration and a redetermination respecting the fixing of petitioner's minimum duration of confinement in accordance with the views expressed herein.

ROSELLINI, C. J., DONWORTH and HUNTER, JJ., and LANGENBACH, J. Pro Tem., concur.