[No. 38695. Department One. March 30, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIE TILLMAN SLAUGHTER, *Appellant*.*

*Reported in 425 P.2d 876.

*Edward M. Lane*, for appellant (Appointed counsel for appeal).

*John G. McCutcheon* and *Hugh E. Fountain, Jr.*, for respondent.

HALE, J.—The injury produced by a weapon may be more telling evidence of a crime than the weapon itself. Defendant doubts this truism and appeals his conviction of assault in the second degree because, although no weapon was found or introduced in evidence, the trial court had the jury answer a special interrogatory asking whether defendant had been armed with a deadly weapon.

Elizabeth Ruiz owned and managed the Miller Apartments at 1520½ Broadway, in Tacoma. Earl McFerrian worked for her around the place part of the time; other times when work was available he did farm labor. Both knew the defendant, Willie Tillman Slaughter, from his visits to the apartment house. Mrs. Ruiz said that Mr. Slaughter had been the cause of confusion and arguments whenever he came there. She had seen him in the apartment house about 10 times within a month and a half, and had warned him to stay away or she would call the police.

Seeing him in the hallway again July 13, 1965, she went up to him, told him to leave, and, turning away, returned to her kitchen. Shortly thereafter, she heard a commotion in the hallway and the sound of someone falling. She went to her apartment doorway just in time to see the defendant leaving. She described it this way:

Q. And when you went to your door there, what did you see? A. I seen a guy lying on the floor. I only thought he hit him but he was lying on the floor and Mr. Slaughter was standing up over him. Q. Did you say anything to Mr. Slaughter? A. Yes. I asked him what was wrong with him, was he losing his mind or was he crazy. Q. What did Mr. Slaughter say? A. He didn't say anything, he turned around and went down the steps.

The man she saw on the floor was Earl McFerrian. She said that defendant and McFerrian were the only two people present in the hallway at the time.

Mr. McFerrian testified that he noticed defendant and Mrs. Ruiz arguing; that he was in the lobby when Mrs. Ruiz walked away, leaving him and Slaughter in the hallway; that he asked Slaughter what was wrong; and that defendant, without warning, suddenly turned and struck him hard, knocking him down. As he went down, he fell against an upholstered armchair. When he got up, he was bleeding. Mrs. Ruiz called the police who, observing the blood and concluding that Mr. McFerrian had been cut on his right side and needed medical attention, had him taken to the hospital.

Dr. Paul Hageman, intern at the hospital, treated Mr. McFerrian on his arrival at the emergency room. He said that McFerrian had two lacerations across the front of his chest, an upper one 2 inches long just below the right nipple, and the other 5 inches long located down about the last rib. The cuts, he said, were neat, without jagged edges, resembling those made by a surgical knife or scalpel. He said that he sutured the two wounds. He stated they were not in a line with each other and were located so that two cutting motions would necessarily be required to inflict them—that is, whoever cut Mr. McFerrian had to strike twice. He stated further that, in his opinion, the two wounds were serious enough to cause great pain and suffering and even death.

Defendant, testifying in his own behalf, denied being present in the Miller Apartments that day, or participating in any way in an assault upon McFerrian. No knife or other

sharply edged cutting instrument was found at the scene of the affray or shown to be in defendant's possession.

The prosecuting attorney for Pierce County charged the defendant by amended information with assault in the second degree under RCW 9.11.020(4), which, in pertinent part, states:

> Every person who, under circumstances not amounting to assault in the first degree—
>
> . . . .
>
> (4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm
>
> . . . .

Defendant now appeals the judgment and sentence of conviction entered upon a jury verdict of guilty. He challenges the sufficiency of the evidence to support the verdict because of the state's failure to produce a weapon and assigns error to the court's instruction and special interrogatory concerning a deadly weapon.

As to the first major point, we are unable to agree with defendant that the evidence was insufficient to support a conviction. In addition to the circumstantial evidence, we have the testimony of Mr. McFerrian that defendant struck him, knocked him down, and, although he did not see the weapon which produced them, the blows inflicted the wounds which required suturing and medical care. The sight of a blade in defendant's hand would have added little to the direct evidence that he struck his victim, knocked him down, and in so doing inflicted two cutting wounds. Viewed in the light of the argument between Mrs. Ruiz and defendant, followed immediately with her leaving the two men alone in the hallway, and the complete absence of any other evidence explaining or implying that the wounds could have been inflicted by another person, or by accident, we have proof of circumstances rivaling in persuasiveness direct evidence that the victim saw a weapon in defendant's hand when the blow was struck.

Indeed, the only circumstantial aspect of McFerrian's evidence was the short interval between his

seeing and feeling of the blow and his seeing and feeling the wounds. The remainder of McFerrian's testimony gave direct evidence of what he saw, heard and felt with his own senses. Even if he were to accept defendant's view that all of the evidence must be regarded as circumstantial, we are of the opinion that the evidence falls within the rules governing proof of guilt by circumstantial evidence as set forth in *State v. Courville*, 63 Wn.2d 498, 387 P.2d 938 (1963) and 20 Am. Jur. *Evidence* § 1217 (1939), which requires that, in a conviction based on circumstantial evidence, such evidence not only must concur to show defendant guilty, and be consistent with a hypothesis of guilt, but also must be inconsistent with any other rational conclusion and exclude every other reasonable theory or hypothesis except that of guilt. It is the jury, under proper instructions, which makes the determination whether the circumstantial evidence excludes every reasonable hypothesis consistent with innocence. *State v. Grenz*, 26 Wn.2d 764, 175 P.2d 633 (1946). Neither *State v. Lillie*, 60 Wash. 200, 110 Pac. 801 (1910), nor *State v. Donofrio*, 141 Wash. 132, 250 Pac. 951 (1926), referred to by defendant, seem applicable to the present case although we apprehend those cases to correctly express the law.

The other point raised by several assignments of error arises from defendant's contention that the court erred in submitting to the jury instructions Nos. 21 and 22. Instruction 21 reads:

If you shall find the defendant guilty of the crime charged you will be required to answer whether the evidence in the case establishes that the defendant was armed with a deadly weapon at the time of the commission of his offense.

Instruction 22 given by the court stated:

The words "deadly weapon" as used in these instructions shall include, but are not limited to any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and

any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

Defendant says that, since no weapon was proved or introduced, the giving of these two instructions was highly prejudicial and reversible error.

The information drafted under RCW 9.11.020(4) charged defendant not with assault by means of a *deadly weapon* but by use of a weapon, or instrument, or thing likely to produce bodily harm. The *deadly weapon* came into the case because, under the statute (RCW 9.95.040), the Board of Prison Terms and Paroles shall, in fixing the minimum terms, take into consideration whether the defendant was armed with a deadly weapon.

Thus, where the trial court has a reasonable basis to believe from the evidence in a case involving felonious violence that the defendant, if guilty, was armed with a weapon, it may submit to the jury the question as to whether the defendant was armed with a deadly weapon under RCW 9.95.010 and 9.95.040. *State v. Coma*, 69 Wn.2d 177, 417 P.2d 853 (1966). The interrogatory may be submitted under suitable instructions at the same time that the court submits the case to the jury providing the court makes clear to them that the question shall not be answered unless and until the jury finds the defendant guilty. *State v. Dickens*, 66 Wn.2d 58, 401 P.2d 321 (1965).

As we pointed out in *State v. Jackson, ante* p. 498, 424 P.2d 313 (1967), RCW 9.95.040 is addressed to the Board of Prison Terms and Paroles and not to the courts. This statute does not define the crime but rather conditions the punishment. Failure of the court to submit to the jury the question of a deadly weapon does not vitiate the conviction, but the absence of such a finding, whether because of a negative answer by the jury or refusal of the trial court to put the question to them, means simply that the court and parole board must presume that defendant was not armed with a deadly weapon.

From the evidence describing the assault and the wounds resulting therefrom, the court had ample evidence upon

which to ask the jury whether defendant was, at the time the blows were struck, armed with a deadly weapon as defined by RCW 9.95.040.

Affirmed.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and DENNEY, J. Pro Tem., concur.