[No. 40612.    Department Two.    August 21, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY HILL, *Appellant.**

*Hunter & Gates* and *Gerald R. Gates,* for appellant (appointed counsel for appeal).

*Robert E. Schillberg* and *Donald J. Hale,* for respondent.

DONWORTH, J.†—By information, appellant Henry Hill

*Reported in 458 P.2d 171.

---

†Justice Donworth is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

was charged with the crime of assault in the first degree. It was alleged therein that with intent to kill a human being or commit a felony upon the person of another, he made an assault with a deadly weapon, a knife, upon James Ellis.

He was represented in the trial court by two court-appointed counsel. To the charges alleged in the information, appellant pleaded not guilty, and he elected not to take the stand on his own behalf or submit any evidence in his defense.[1]

After due deliberation, the jury returned a verdict of guilty of assault in the second degree and answered in the affirmative the question submitted by the trial court as to whether he was armed with a deadly weapon at the time of the assault. Pursuant to the jury's verdict, the trial court sentenced appellant to a state penal institution for a maximum term of 10 years.

Setting forth five assignments of error, appellant brings this appeal from the foregoing judgment and sentence entered by the trial court.

The state's evidence regarding the commission of the alleged assault may be summarized as follows:

The victim, James H. Ellis, had moved to the Everett area from Aberdeen about 4 months before this incident occurred and rented a small cabin located on the outskirts of the city. He permitted several unemployed men of his acquaintance to live in the cabin from time to time. For about a week preceding the assault incident, appellant had been staying there.

On the morning of June 19, 1968 Ellis left the cabin and went into the city seeking employment. About 3:30 p.m., accompanied by another roomer, Dale Rudicil, Ellis returned to the cabin and entered it finding appellant and two others sitting in the main room drinking a jug of wine. Since the door had been padlocked, appellant and his companions, who were also staying there, had apparently entered the cabin through a window. Shortly after Ellis' re-

---

[1] From the tenor of the cross-examination of the state's witnesses and the appellant's argument in his briefs in this court, it appears that appellant's main defense was self-defense.

turn an argument ensued and appellant pulled a knife and threatened to cut Rudicil's throat. Ellis, attempting to intercede on Rudicil's behalf, had his own throat slashed by the knife being wielded by appellant. The victim rushed to the hospital where doctors managed to save his life despite a deep laceration on the left side of his neck which severed a large muscle and certain arteries and veins.

Officer Jack Kuehn and a fellow patrolman from the Everett Police Department were dispatched to the hospital to investigate the assault. They talked to an unidentified man there who directed them to the location of the cabin. Failing to find appellant there, they proceeded to check the Rescue Mission and the bars at the lower end of the city looking for a man of the description furnished them. About 7:45 p.m., after a fruitless search of the city, the officers returned to the cabin where they apprehended appellant, who had returned and apparently was just leaving. Asked to produce some identification, he produced a work slip with his name and social security number thereon. They advised him that an assault had occurred on the premises that day and asked him to accompany them to the police department. Appellant complied with their request and went with the officers to the police department where he was taken to the office of the detective division.

Detective Henry Collins, in the presence of Detective Enard Enberg, interviewed appellant at this time. Prior to the interrogation, Detective Collins handed a form to appellant on which were stated his constitutional rights and a statement of waiver. Appellant was read these rights aloud, and at the request of the officer, he read them aloud. Appellant told the detectives that he understood his rights and had gone through this same procedure in the past. The detectives asked him to sign a form indicating that he had been advised of his rights which he did. However, he refused to sign the bottom portion of the form which stated that he fully understood his rights, could exercise them at any time during the interrogation, and intended to waive his right to remain silent and right to presence of his attorney. Appellant, according to the detectives, said he would

not sign that portion of the form but would answer any questions the detectives had without the presence of his attorney. This was denied by appellant at the pretrial hearing.

Prior to the trial, a CrR 101.20W hearing was conducted to determine the admissibility of certain admissions made by appellant, at the foregoing ·interrogation, to Detective Collins and Detective Enberg on the evening of· June 19th at the police department. At the conclusion of the hearing, the trial court ruled that appellant had been fully advised of his constitutional rights and had made a knowing and intelligent waiver of those rights prior to any questioning by the detectives. The admissions were admitted in evidence pursuant to the trial court's ruling.

Appellant's first assignment of error is directed to the trial court's ruling at the CrR 101.20W hearing in that the court erred in admitting into evidence Detective Collins' testimony regarding certain admissions made to the two detectives on the evening of June 19, 1968.

A review of the evidence produced at the CrR 101.20W hearing indicates clearly that appellant was properly advised of all his constitutional rights; that he was calm and cooperative during the interrogation, and that no promises or threats were made to him. Although it appears that appellant had been drinking intoxicants prior to his arrest, it does not appear that he was under the influence of intoxicants to the point that it could be fairly said that he could not understand his rights. In fact, the evidence shows that he did understand his rights and understandingly made the admissions to the detectives.

In support of his first assignment, appellant relies on *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968), in which this court discussed the heavy burden which *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966) places upon the prosecution to show that defendant intelligently waived his rights to counsel. This case is distinguishable from *Davis,* however, in that unlike the *Davis* case where there was a missing police witness, both police

witnesses to the interrogation testified at the CrR 101.20W hearing in the instant case.

We are satisfied from our examination of the record, containing all of the testimony at the preliminary hearing, that the trial court made proper findings and correctly ruled on the issue of the admissibility of appellant's admissions to the detectives. The detectives' testimony was clear and unequivocal. In view of the testimony of appellant and of the detectives, and the court's findings, we think the first assignment of error is without merit. *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964); *State v. Burgess,* 71 Wn.2d 617, 430 P.2d 185 (1967); *State v. Cadena,* 74 Wn.2d 185, 443 P.2d 826 (1968).

Appellant next contends that the trial court erred in admitting in evidence the knife (exhibit No. 3) which was found by Detective Collins and Detective Enberg when they searched the cabin on June 19, 1968 shortly after the conclusion of their interview with appellant.

Detective Collins testified that they were looking for a bone-handled knife and a pair of blue-gray coveralls. In one room they found the coveralls with a letter therein addressed to appellant. They found the knife in question near the entrance of the kitchen of the cabin lying in a cardboard box which also had some wood in it. The knife, as described by Collins, was about 11 inches long, with a blade of approximately 6½ inches. Appellant objected to the introduction of the knife on the grounds that it had not been sufficiently identified as having anything to do with the case. After lengthy argument by both counsel in the absence of the jury, the trial court ruled that it was admissible. This ruling was on the basis that the state would produce additional evidence tending to connect the knife with the crime alleged.

When the trial resumed, Detective Collins testified about finding the knife in the cardboard box, and he said it was lying between the cardboard and piece of wood inside it. The knife was in a sheath. Detective Enberg was present at that time. A butcher knife was also found by the detectives lying on a counter in the kitchen.

Further testimony by Detective Collins revealed that near the wood box, both inside and outside the kitchen, he saw small drops of a red substance which looked like blood. Thereafter, in the trial, Enberg testified at some length about finding exhibit No. 3, and he noted that there were jelly-like globules on the side of the blade that appeared to be blood. On cross-examination, he stated that this substance was still wet and appeared to be in the process of drying.

In his brief, appellant's counsel state that the admission of exhibit No. 3 as being the actual weapon used in the assault was probably technically unimportant because appellant was convicted of second degree assault and not of first degree assault with which he was originally charged. However, in view of the special verdict of the jury, finding that at the time of the assault appellant was armed with a deadly weapon, he contends that this exhibit should not have been admitted because under the evidence the jury could only speculate as to whether this hunting knife was the weapon used in the commission of the assault.

In RCW 9.95.040, the legislature has defined a deadly weapon and that definition includes "any knife having a blade longer than three inches." The only other knife referred to in the evidence was the butcher knife which appellant told the detectives he was holding in his hand to protect himself when Ellis ran into it. The evidence was undisputed, however, that each of the knives in question had blades of more than 3 inches in length.

Under RCW 9.95.015, the trial court in a criminal case is authorized to submit a special interrogatory to the jury where the allegation is and there is evidence establishing that defendant was armed with a deadly weapon at the time he committed the alleged crime.

■ In *State v. Slaughter*, 70 Wn.2d 935, 425 P.2d 876 (1967), we said at 940:

Thus, where the trial court has a reasonable basis to believe from the evidence in a case involving felonious violence that the defendant, if guilty, was armed with a weapon, it may submit to the jury the question as to

whether the defendant was armed with a deadly weapon under RCW 9.95.010 and 9.95.040. *State v. Coma,* 69 Wn.2d 177, 417 P.2d 853 (1966).

In our opinion there was sufficient evidence produced by the state that would establish that appellant was armed with a knife longer than 3 inches in length at the time of the assault. From the evidence, the trial court had a "reasonable basis" to believe that exhibit No. 3 was the weapon used by appellant at the time of the assault and was a deadly weapon as defined by RCW 9.95.040. Thus, there was no error in admitting the exhibit in evidence or in the submission of the special interrogatory to the jury pursuant to RCW 9.95.015.

Appellant's third assignment of error is based on the trial court's denial of a motion for mistrial made after Ellis, on redirect examination, gave an unresponsive answer to a question posed by the prosecutor. Ellis, at the time, was being asked about a man named Smalley who was brought to the cabin by appellant and one Bud Hammond on the day of the alleged assault. The witness testified that was the first time he had ever seen Smalley and then he was asked if he had seen him since the incident. He replied: "I seen him the next day when he got out of jail. They held him all night in jail to keep Henry [appellant] from killing him."

Prompt objection was made to the response by appellant's counsel and it was sustained by the trial court. The trial court instructed the jury to disregard the statement and ordered it stricken from the record. Pursuant to his request, appellant's counsel was allowed to address the court at the conclusion of the redirect examination. At that time appellant's counsel moved for a mistrial on the ground that Ellis' volunteered statement that Smalley was taken into protective custody because the police thought appellant might kill him was extremely prejudicial in that it would tend to establish the appellant as a violent person.

After hearing the arguments of both counsel, the trial court stated at some length (in the absence of the jury) its reasons for its conclusion that the inadvertent statement by

Ellis was not prejudicial to appellant and, therefore, should be disregarded by the jury. At the suggestion of appellant's counsel that a general instruction be given to the jury at the end of the case to the effect that they should disregard anything that the court ruled was inadmissible (especially including the unresponsive statement of Ellis), the trial court stated it would consider an instruction along those lines at the conclusion of the trial.

At the conclusion of the trial, a general instruction (No. 17) was given in which the trial court advised the jury to disregard any statements that may have been stricken or were ruled inadmissible. No exception was taken by appellant's counsel to the giving of this instruction, and we see no reason to set it forth in full here.

As a result of the trial court's instruction and its thorough analysis of any effect the statement might have on appellant's case, we find no prejudice in the trial court's denial of the motion for mistrial. Furthermore, since no exception was taken to the giving of the foregoing instruction as required by CR 51(f), appellant may not now complain in this court as to the propriety of the instruction or the denial of the motion. Therefore, there was no error in the trial court's denial of appellant's motion for mistrial.

During the trial, Charles Trask, M.D., the physician who treated Ellis at the hospital following the assault, was called as a state's witness. He described in some detail his treatment of the victim and the nature of the wound. He testified that, in his opinion, the wound was made by a sharp object. Later in the testimony, the physician was asked whether in his opinion the laceration was made from the top downward or vice-versa. In answering the question, he stated he could not express a professional opinion without considering a statement made to him by the victim. On motion of appellant's counsel, the trial court struck this portion of the physician's testimony and instructed the jury that the doctor's opinion as to the direction in which the wound was inflicted was to be disregarded.

This brings us to appellant's assignment of error No. 4, which is based on the trial court's refusal to give appel-

lant's proposed instruction No. 2 concerning the doctor's testimony described above. The proposed instruction reads as follows:

> During the trial of this case, the witness, Dr. Charles Trask, testified and gave his opinion with respect to whether the James Ellis laceration was made by an upward or downward stroke. You were later instructed to disregard this evidence because the doctor had used hearsay statements of James Ellis in forming his opinion. I further instruct you to disregard the doctor's testimony on this aspect of the case and it will be improper for you to consider it in any way in your deliberations or in arriving at a verdict.

The trial court, instead of the proposed instruction, gave a general instruction, No. 17, which was discussed in the prior assignment of error. We think that instruction No. 17 adequately protected the rights of appellant in this case. Appellant's requested instruction merely reiterated what the court had already told the jury regarding Dr. Trask's opinion. Where this is so, and the trial court's instruction adequately covers the subject, the matter is within the discretion of the trial court. We cannot say from our review of the two instructions in question, that the trial court has abused its discretion. Therefore, the assignment of error is without merit.

Lastly, appellant challenges the giving of instruction No. 8A by the trial court. That instruction stated:

> In connection with the necessary amount of force which might be used, you are instructed that the defendant must have used only that force which a reasonably cautious and prudent man, situated as was the defendant, would have used under the circumstances as they appeared to him at the time.

Appellant urges that it was error to instruct the jury that the amount of force that may be lawfully used in self-defense is to be measured by what a reasonably prudent man would have done under the existing circumstances. Although he submitted no proposed instruction on the subject, he criticizes the instruction given because it did not make him the sole judge as to existence of the peril

of great bodily harm confronting him and the amount of force necessary to protect himself against it.

If we were to agree with appellant's position, there would be no limit to the amount of force which a person could use in defending himself against such alleged peril.

■ The following decisions of this court all recognize the rule that in such a situation of peril a person can use only such force to protect himself as a reasonably prudent man would have used under the conditions appearing to him at that time. *State v. Miller*, 141 Wash. 104, 250 P. 645 (1926); *State v. Tyree*, 143 Wash. 313, 255 P. 382 (1927). This is settled law in this jurisdiction.

Therefore, in our view, instruction No. 8A given by the trial court was not erroneous and did properly state the applicable law.

Accordingly, having considered all appellant's assignments of error and finding them without merit, the judgment and sentence of the trial court is affirmed.

HUNTER, C. J., HILL, ROSELLINI, and HALE, JJ., concur.