October 25, 1991

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) ) | APPEAL NO. 90-063 CRIMINAL CASE NO. 90-81 |
| Plaintiff/Appellee, | ) ) | |
| vs. | ) ) | OPINION |
| JAMES N. KANIKI, | ) ) | |
| Defendant/Appellant. | ) ) ) | |

Argued and Submitted June 27, 1991

Counsel for Defendant/Appellant:     Pamela O'Leary Tower
Assistant Public Defender
Office of the Public
  Defender
Civic Center
Saipan, MP 96950

Counsel for Plaintiff/Appellee:     Maggie Gleason
Assistant Attorney General
Office of the Attorney
  General
Civic Center
Saipan, MP 96950

BEFORE:   DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

On April 17, 1990, James N. Kaniki was arrested and charged with assault and battery and assault with a dangerous weapon.[1]

---

[1] Assault and battery is a misdemeanor. 6 CMC § 1202. Assault with a dangerous weapon is a felony. 6 CMC § 1204.

354

Following a bench trial, Kaniki was found guilty of both offenses on July 26, 1990. Kaniki does not contest his conviction for assault and battery, but appeals his conviction for assault with a dangerous weapon on the basis that there was no direct evidence presented at trial that he used a dangerous weapon.

I.

On the evening of April 17, 1990, Kaniki and several other persons attended a party in Koblerville, Saipan, drinking beer and singing songs.

A fight began. Kaniki punched Marino Aldan and Aldan's girl-friend, Justina Francisco.[2] Zacharias Sakisat stepped in to stop the fight. When he tried to calm Kaniki, Kaniki attacked him, punching him in the chest.

Sakisat doubled over from the blow.

Witnesses subsequently testified that Kaniki was the only person in the group who punched Sakisat in the chest, and that Kaniki was the only person standing near Sakisat when he doubled over from Kaniki's blow.

After he was struck, Sakisat's wife Remiang observed that her husband was "wet with blood." Transcript of Proceedings at 103. She told him that they should get into their car and drive to the hospital. The couple entered their car and, with Zacharias Sakisat

---

[2]This act was the basis of the conviction for assault and battery. 6 CMC § 1202(a) provides, in pertinent part: "[a] person commits the offense of assault and battery if the person unlawfully strikes, beats, wounds, or otherwise does bodily harm to another . . . ."

driving, backed up and then pulled forward. They had not gone far when the car struck a telephone pole. They then fled on foot.

Eventually, later that evening, Sakisat was taken to the Commonwealth Health Center emergency room and treated for a bleeding, jagged wound between two and three inches in length in the lower chest region. A physician on duty, Dr. John Hardy, performed surgery. Dr. Hardy testified that Sakisat's chest wall, ribs and muscle were penetrated and that his stomach wall was scratched. He expressed the opinion that the wound was caused by a sharp instrument three or four inches long, possibly a knife blade.

At trial, Kaniki testified that he merely slapped Sakisat and punched Aldan. None of the witnesses, including Sakisat, saw Kaniki use a knife or other sharp instrument during the assault, nor was any such weapon introduced into evidence.

According to the trial court:

> By starting with the proposition that there was a wound to the stomach of Zacharias Sakisat, as testified to by [Dr. Hardy], I do believe that a knife wound occurred. It was clear and concise testimony to that effect. . . . What is . . . shown, and I will find, that the wound was caused by a dangerous weapon. Where [the weapon] is I don't think is material.

Transcript of Proceedings, 274, 276. Based on this finding, the court found Kaniki guilty of assault with a dangerous weapon in addition to assault and battery.[3]

---

[3]Kaniki was sentenced on November 7, 1990. For assault and battery, he received a suspended sentence of one year in jail. For assault with a dangerous weapon, he received a five year jail sentence, suspended on the condition that he pay a $3,000 fine, perform 200 hours of community service, pay Sakisat for his out-of-

## II.

Kaniki's sole argument on appeal is that there was insufficient evidence from which any rational trier of fact could have found, beyond a reasonable doubt, an essential element of the crime of assault with a dangerous weapon--i.e. that a dangerous weapon was used.

■On a challenge to the sufficiency of the evidence, we must consider the evidence in a light most favorable to the government and determine whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Commonwealth v. Kaipat, No. 90-059 (N.M.I. Oct. 21, 1991).

## III.

"A person commits the offense of assault with a dangerous weapon if he or she threatens to cause, attempts to cause, or purposely causes bodily injury to another with a dangerous weapon." 6 CMC § 1204(a). "Dangerous weapon" is defined to include "a knife . . . or other thing by which a fatal wound or injury may be inflicted." 6 CMC § 102(f).

Kaniki admits that he struck Sakisat, but argues that because there is no direct evidence that he used a dangerous weapon in the assault his conviction should be set aside.

■"It has been held that an assault with a deadly weapon can be proven by the nature of the wound, even if there was no direct

---

pocket medical expenses, refrain from drinking alcoholic beverages, and have no further contact with Sakisat.

357

testimony that a knife was seen in the hands of the defendant." Studdard v. State, 214 So.2d 767 (Fla. Dist. Ct. App. 1968).

In a case similar to the case at bar, the Supreme Court of Washington affirmed a conviction for an assault resulting in stab wounds despite the fact that "[n]o knife or other sharply edged cutting instrument was found at the scene of the affray or shown to be in defendant's possession." State v. Slaughter, 425 P.2d 876, 878 (Wash. 1967).[4] An emergency room physician testified that the victim's wounds resembled those made by a knife or scalpel. According to the Slaughter court:

> [W]e are unable to agree with defendant that the evidence was insufficient to support a conviction. In addition to the circumstantial evidence [of an altercation], we have the testimony of [the victim] that defendant struck him, knocked him down and, although he did not see the weapon which produced them, the blows inflicted wounds which required suturing and medical care. The sight of a blade in defendant's hand would have added little to the direct evidence that he struck his victim, knocked him down, and in so doing inflicted two cutting wounds. Viewed in the light of the argument between [a witness] and defendant, followed immediately with her leaving the two men alone in the hallway, and the complete absence of any other evidence explaining or implying that the wounds could have been inflicted by another person, or by accident, we have proof of circumstances rivaling in persuasiveness direct evidence that the victim saw a weapon in defendant's hand when the blow was struck.

Id.

In this case, there is undisputed evidence that Kaniki punched Sakisat in the chest, that he was the only person who did so, and

---

[4]See also State v. Seefeldt, 292 N.W.2d 558 (Minn. 1980) (although victim did not actually see weapon used, testimony that it was sharp and pointed like knife and that she believed it was a knife, coupled with evidence of minor wounds, was sufficient to sustain conviction for assault with dangerous weapon).

that only he was close to Sakisat when Sakisat was struck. Remiang Sakisat testified that her husband bled after he was struck. Although no witness saw Kaniki use a knife, it was reasonable to infer from the nature of the wound--as described by the attending physician--that Sakisat had been stabbed with a dangerous weapon. Slaughter, supra. It was not necessary for direct evidence to be presented at trial that a knife or sharp instrument was used to convict Kaniki of assault with a deadly weapon. Id.

Remiang Sakisat's testimony that her husband was wet with blood immediately after he was struck negated the only other possible cause for his injury--the collision with the telephone pole when the couple subsequently left the scene of the assault in their car.

The conviction for assault with a deadly weapon is supported by sufficient evidence and is AFFIRMED.

Entered this 25ᵗʰ day of October, 1991.

JOSE S. DELA CRUZ, Chief Justice

RAMON G. VILLAGOMEZ, Associate Justice

JESUS C. BORJA, Associate Justice