[Nos. 3844–II; 3898–II. Division Two. July 3, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN J. LEEK, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. BOYCE K. ELLISON, *Appellant.*

*Steven G. Toole* and *Robert J. Banghart,* for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *William H. Broughton* and *Christian C. Casad, Deputies,* for respondent.

PETRICH, J.—Two cases are consolidated in this appeal. The defendants, in separate trials, were found guilty of selling a controlled substance for profit in violation of RCW 69.50.410. Ellison's case was tried to the court while defendant Leek's case was tried to the jury. Ellison was found guilty of one violation[1] and Leek was found guilty of two. Both raise identical issues. They contend that there was insufficient evidence to establish that a "profit" was

---

[1]Ellison was also found guilty of delivery of a controlled substance in violation of RCW 69.50.401(a) stemming from a separate transaction, but does not appeal from that determination.

realized in their respective transactions. Additionally, each contends that the statute defining the offense is so vague that it offends the due process of law requirement of the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution. We find that the errors claimed by defendants are without merit, and affirm.

Ellison and Leek were acquaintances in the Bremerton area. During the summer months of 1978, a state patrol undercover agent contacted defendants. He proceeded to negotiate prices with them in a series of transactions for the purchase of the controlled substances.

The first transaction occurred at Ellison's residence. The agent negotiated with him for the purchase of a small quantity of "junk." The price was agreed to upon Ellison's statement that the agent could "have it for $90, the same thing that I got it for." The "junk," which was heroin, and $90 in cash were exchanged. The next transaction, which also occurred at Ellison's residence, was between the agent and Leek. Leek delivered 7 grams of heroin to the agent for the agreed sum of $625 cash. The last transaction was again between Leek and the agent which occurred at the agent's apartment. This involved the transfer of 6 grams of heroin in exchange for the agreed sum of $520 cash.

No evidence was presented to prove what either defendant paid for the heroin other than the statement of Ellison referred to above. No evidence was presented to establish the value of the heroin at the time of the respective transactions. In each case, defendants moved for an order of dismissal at the close of the State's case for the reason that the State failed to establish that a "profit" was realized by defendants. Each argued that profit means that the seller receives something of a value which exceeded the cost of the heroin sold. In further support of his motion, Leek argued that the act was impermissibly vague in violation of due process. Although Ellison did not argue the constitutional issue below, he does present this issue in his brief on appeal. The motions were denied, and in each instance the

defendants rested without presenting any evidence. Their convictions followed.

The pertinent parts of the statute we are asked to construe provide as follows:

> 69.50.410 Prohibited acts: D—Penalties. (1) Except as authorized by this chapter it shall be unlawful for any person to sell for profit any controlled substance or counterfeit substance classified in Schedule I, RCW 69.50.204, except leaves and flowering tops of marihuana.
>
> For the purposes of this section only, the following words and phrases shall have the following meanings:
>
> (a) "To sell" means the passing of title and possession of a controlled substance from the seller to the buyer for a price whether or not the price is paid immediately or at a future date.
>
> (b) "For profit" means the obtaining of anything of value in exchange for a controlled substance.
>
> (c) "Price" means anything of value.
>
> . . .
>
> (4) In addition to the sentences provided in subsection (2) of this section, any person convicted of a violation of subsection (1) of this section shall be fined in an amount calculated to at least eliminate any and all proceeds or profits directly or indirectly gained by such person as a result of sales of controlled substances in violation of the laws of this or other states, or the United States, up to the amount of five hundred thousand dollars on each count.
>
> . . .
>
> This section shall not apply to offenses defined and punishable under the provisions of RCW 69.50.401 as now or hereafter amended.

Defendants argue that the clear meaning of the statute under which they were charged requires proof that they realized something more than their costs, or at least market value, in the respective sales of heroin. They argue that the dictionary meaning of "value" as it appears in RCW 69.50-.410(1)(b), defining profit, means "a fair or proper equivalent in money, commodities, etc. for something sold or exchanged; fair price." If this view is not obvious, defendants then contend the statute is ambiguous because of the

conflict between the statutory definition of profit, and the dictionary definition of profit and value. Claiming ambiguity, the defendants then urge the court to resort to rules of statutory construction which they claim interpret "profit" to mean net gain over costs or at least fair value. Finally, the defendants argue that if resort to the rules of statutory construction does not clearly show that a "gain" is a necessary element of the crime, the act is so vague and uncertain so as to lack fair notice of prohibited conduct mandated by the constitution.

Defendants' arguments must fail because the original premise of ambiguity is in error. Defendants in their attack single out words and phrases contained in the act and then apply meaning to single words which lead to strained meanings and absurd results. We will not read into an act ambiguity where none exists. The act makes it unlawful "to sell for profit any controlled substance." The legislature clearly set forth its meaning when it defined the phrase "for profit," (rather than the word profit) to mean "the obtaining of anything of value in exchange for a controlled substance." It did not equate "for profit" with value so as to require proof that the heroin was sold for its "value." The words "of value" qualify the phrase "anything." It is obvious that the receipt of any item or thing of some worth in exchange for a controlled substance is what is meant by the words "for profit."

The weight to be given statutory definition of terms used in a statute is set forth in 1A C. Sands, *Sutherland's Statutes and Statutory Construction* § 27.02, at 310 (4th ed. 1972) as follows:

> Statutory definitions of words used elsewhere in the same statute furnish official and authoritative evidence of legislative intent and meaning, and are usually given controlling effect. Such internal legislative construction is of the highest value and prevails over executive or administrative construction and other extrinsic aids.

(Footnotes omitted.) A term whose statutory definition declares what it "means," as used in the instant case,

excludes any meaning that is not stated. 2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 47.07 (4th ed. 1973). The statutory definition of "for profit" is clear and precise. When the statutory language is plain, the meaning must be derived from the wording itself, and there is no room for judicial interpretation. *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979); *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972); *King County v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967).

The legislature was obviously prohibiting commercial transactions of controlled substances, meaning transactions involving the transfer of the prohibited articles, for any compensation whatsoever. Although the issue as to the meaning of the act presently under review was not specifically addressed in *State v. Kinsey,* 20 Wn. App. 299, 306, 579 P.2d 1347 (1978), the meaning was readily apparent in that decision wherein the court stated that the term "for profit" "merely means the giving of something of value in exchange for the heroin", and that accepting $275 for heroin constituted a profit under the statute.

To adopt the meaning urged by defendants would lead to absurd results. The sale of the identical amount of heroin for the same price by two different vendors, one having acquired the heroin at a bargain, would result in different crimes with different penalties. The legislative acts must be interpreted to avoid strained or absurd consequences. *See State v. (1972) Dan J. Evans Campaign Comm.,* 86 Wn.2d 503, 546 P.2d 75 (1976).

The defendants' next argument, that the statute requires a showing of a "gain" to the seller, is based on the rule that no part of an act be construed so as to apply a superfluous or insignificant meaning to any word or words used. They then refer to RCW 69.50.410(4) which authorizes fines calculated to eliminate "proceeds or profits" gained by the seller. They argue that if net gain is not an essential ingredient of the proscribed act, the use of "profits" in this subsection was superfluous unless it is assumed that the legislature intended the terms "proceeds" and "profits" as

used, having different meanings. They argue that "proceeds" then must have been intended to mean monies received for costs and "profits" to mean monies received in excess of costs. The defendants in their argument ignore the obvious. The act defines the phrase "for profit" in order to clearly set forth the proscribed conduct. It did not define the single word "profit" which was used in the subsection authorizing the fine. Consideration of the fine would only follow after a determination of guilt. The assessment of a fine calculated in an amount equal to proceeds or profits if one was realized, as each term is defined by the dictionary and as suggested by the defendants, does not offend the statutory definition of the phrase "for profit."

Next, defendants ask the court to consider affidavits subscribed 5 years after the enactment of the statute by two members of the legislature in order to ascertain legislative intent, citing as authority, *State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979) and *State v. Coma,* 69 Wn.2d 177, 417 P.2d 853 (1966). Both cases relied upon by defendants are distinguishable. In *Coma,* the court considered the report of the legislative council explaining the purpose of the bill recommended by it to the legislative session which adopted the bill. In *Zuanich,* the dissenting opinion of Justice Stafford referred to the remarks made on the floor of the Senate by the then chairman of the Senate judiciary committee which had charge of the bill. In each instance the report or comments were made during the consideration of the measure by the legislature. While remarks of the chairman of the committee in charge of the bill or reports of the committee itself may be resorted to in the search for "legislative intent," statements or opinions of *individual* legislators are not an authoritative guide in determining such intent. *See Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 494 P.2d 216 (1972).

The reason for excluding statements or opinions of individual legislators is set forth in 2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 48.13, at 216 (4th ed. 1973), which provides as follows:

Statements by individual members of the legislature as to the meaning of provisions in a bill subsequently enacted into law, made during the general debate on the bill on the floor of each legislative house following its presentation by a standing committee, are generally held not to be admissible as aids in construing the statute. In explanation, it has been noted that legislative debates are "expressive of the views and motives of individual members, and are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose of the lawmaking body," and that ". . . it is impossible to determine with certainty what construction was put upon an act by the members of the legislative body that passed it by resorting to the speeches of individual members thereof. Those who did not speak may not have agreed with those who did; and those who spoke might differ from each other. . . ."

As further reason for discounting the value of statements made in floor debate, it has been noted that "in the course of oral argument on the Senate floor, the choice of words by a Senator is not always accurate or exact."

(Footnotes omitted.)

An added reason for rejecting the offered statements of the individual legislators in the instant case is the fact that the statements offered were not made at the time the legislative body considered the proposal.

Having urged the proposition that "for profit" means a gain to the vendor, but conceding that "for profit" may mean the receipt of anything of value, the defendants next contend that these divergent views establish that the act is unconstitutionally vague and in violation of the due process clause of the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution.

 Our analysis of this challenge to the act is prefaced by the proposition that a statute is presumed constitutional and will not be judicially declared otherwise unless its repugnance to the constitution clearly appears. *State v. Oyen,* 78 Wn.2d 909, 480 P.2d 766 (1971), *vacated and*

*remanded on other grounds,* 408 U.S. 933, 33 L. Ed. 2d 745, 92 S. Ct. 2846 (1972); *Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960), *cert. denied,* 364 U.S. 932, 5 L. Ed. 2d 365, 81 S. Ct. 379 (1961); *In re Jackson,* 6 Wn. App. 962, 497 P.2d 259 (1972).

■ A statute challenged for vagueness raises the question of procedural due process. At issue is whether a statute provides fair notice, measured by common practice and understanding, of the prohibited conduct, and whether there are proper standards of adjudication. *Papachristou v. Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972); *Lanzetta v. New Jersey,* 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618 (1939); *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 65 L. Ed. 516, 41 S. Ct. 298, 14 A.L.R. 1045 (1921); *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977); *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975); *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975); *State v. Oyen, supra.*

■ In *Carter,* the words "immoral purposes," when considered in the context of a sex crime statute, were held sufficiently definite to describe the prohibited criminal conduct. In *Oyen,* the challenged act which prohibited those who willfully "loiter" on school property "without a lawful purpose," was determined to be sufficiently definite to pass the constitutional test of vagueness. The prohibited conduct in the instant case is much more definite. The statute's definition of the phrase "for profit" as "the obtaining of anything of value in exchange for a controlled substance", RCW 69.50.410(1)(b), is sufficiently definite to give reasonable notice to those who may engage in such a transaction that a "sale for profit" is broadly defined. Ascertainable standards of adjudication are readily apparent to limit and guide the law enforcement agencies and the court in the enforcement and interpretation of the law. We fail to see how the defendants were denied due process under the vagueness doctrine.

The judgments and sentences of the trial court are affirmed.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied July 31, 1980.

Review denied by Supreme Court November 7, 1980.