[Nos. 29461-0-I; 29760-1-I. Division One. December 21, 1992.]

THE UNIVERSITY OF WASHINGTON, *Respondent*, v. KATHY JACOBS, ET AL, *Appellants*.

THE UNIVERSITY OF WASHINGTON, *Respondent*, v. THE HIGHER EDUCATION PERSONNEL BOARD, *Appellant*.

*Edward E. Younglove III* and *Swanson, Parr, Cordes, Younglove, Peeples & Wyckoff,* for appellant Jacobs.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* for appellant Higher Education Personnel Board.

*Kenneth O. Eikenberry, Attorney General,* and *Jeffrey W. Davis, Assistant,* for respondent.

COLEMAN, J. — Kathy Jacobs and the Higher Education Personnel (HEP) Board appeal the trial court's reversal of the HEP Board's ruling. They argue that the trial court incorrectly interpreted WAC 251-19-050(2) as extending an employee's probationary period by the sum of missed workdays and nonworkdays preceded by a missed workday, rather than by the number of missed workdays only. We affirm.

On September 21, 1989, Jacobs began working for the University of Washington Tuesdays through Saturdays as a check stand operator. As a new civil service employee, she was required to complete a 6-month probationary period before becoming a permanent employee. RCW 28B.16.100; WAC 251-06-090. Based on her starting date, Jacobs' probationary period was scheduled to end on March 20, 1990. However, because she had taken more than 10 days of leave without pay, her probationary period was to be extended "by an amount of time equal to the period of leave without pay", as required by WAC 251-19-050(2).

On June 4, 1990, Jacobs received a letter stating that her employment would terminate at the end of the workday on June 6, 1990. Under the University's calculation, Jacobs' probationary period did not end until June 13, 1990. To reach this date, the University extended Jacobs' probationary period by the sum of missed workdays and nonworkdays preceded by a missed workday.

Jacobs appealed the termination, alleging that her probation had ended and that, as a permanent employee, she was entitled to the procedural safeguards provided in WAC 251-11-050.[1] Under Jacobs' calculation, which included only missed workdays, her probation had ended on May 11, 1990. Thus, she argued, the University's attempt to terminate her on June 4 violated WAC 251-11-050.

The director of the HEP Board agreed with Jacobs that "leave without pay (LWOP) is counted for work days only."

[1] WAC 251-11-050 provides that permanent employees may be dismissed only for just cause and must be given 15 days' written notice of the termination.

To calculate the extended probationary period, the director used the following formula:

 a. Count only the number of scheduled *work* days taken as leave without pay during the probationary period. If ten or more LWOP days occurred, go to "b."

 b. Count forward from the end of the probationary period the number of LWOP days, counting only the scheduled work days (in this case Tuesday through Friday).

Based on this formula, the director concluded that Jacobs' probation had ended on June 1, 1990, 3 days prior to her receipt of the termination letter. He ordered the University to reinstate Jacobs as of June 6, 1990, with full pay and benefits. The HEP Board adopted the director's findings and conclusions. The University appealed the HEP Board's order to the Superior Court, which reversed the order.[2] Jacobs appeals.

The sole issue on appeal is whether the trial court erred in interpreting the term "period of leave without pay" to include nonworkdays preceded by a missed workday.

RCW 28B.16.100 directs the HEP Board to adopt regulations regarding employees in institutions of higher education. Pursuant to this directive, the HEP Board adopted WAC 251-01-310, which provides for a 6-month probationary period for new employees. The HEP Board also adopted WAC 251-19-050(2), which provides:

In the event an employee is on leave without pay for more than ten work days during the probationary period, the completion date of the probationary period shall be extended by an amount of time equal to the *period of leave without pay.*

(Italics ours.) The term "period of leave without pay" is not defined in that chapter or in the definitions chapter. However, in the chapter on holidays and leave, WAC 251-22-200(3) states:

---

 [2]RCW 28B.16.150(1)(a) allows appeals to the superior court on grounds that an order was "[f]ounded on or contained error of law, which shall specifically include error in construction or application of any pertinent rules or regulations". RCW 28B.16.150(1)(c) allows appeals on grounds that the order was "[m]aterially affected by unlawful procedure". Here, the University alleged error of law and lack of jurisdiction, both of which are covered by the statute.

> Leave of absence without pay extends from the time an employee's leave commences until he/she is scheduled to return to continuous service, unless at the employee's request the employing official and the personnel officer agree to an earlier date.

The dispute in this case centers on whether this definition includes days when an employee is not regularly scheduled to work and, if so, whether it controls in determining the amount of time by which an employee's probationary period must be extended.

▮ When reviewing an agency decision for error of law, the court is entitled to substitute its determination for that of the agency. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). However, an agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight. *Franklin Cy.*, at 325 (quoting *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981)).

▮ Statutory language is deemed to be ambiguous when it is susceptible to more than one reasonable interpretation. *Washington Fed'n of State Employees v. State Personnel Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989). When the language of a statute is plain and unequivocal, however, courts must construe it according to its true intent despite a contrary interpretation by an administrative agency. *Washington Fed'n*, at 309. Rules of statutory construction also apply to administrative regulations. *See Nelson v. Department of Corrections*, 63 Wn. App. 113, 115-16, 816 P.2d 768 (1991) (citing *State v. Burke*, 92 Wn.2d 474, 478, 598 P.2d 395 (1979)).

Jacobs argues that WAC 251-22-200(3), which defines the length of leave of absence without pay, is ambiguous because it "makes no reference to whether both working and nonworking days are included, or just working days." Reply Brief of Appellant, at 2. She also argues that including nonworkdays makes no sense and is not supported by use of the term elsewhere. She points out that under WAC 251-22-

117(3), leave of absence without pay for emergency child care is limited to 3 days per year. According to the University's interpretation, she argues, an employee who was absent on a Friday would automatically use all of his or her emergency child care leave. Also, she argues, the Court of Appeals has interpreted the military leave statute, which provides for a maximum of 15 days' leave, as referring to 15 workdays. *See Washington Fed'n*, at 309. Thus, Jacobs argues, the regulation in this case should also be interpreted as referring only to workdays.

We disagree. The plain language of the regulation includes both workdays and nonworkdays preceded by a missed workday. The regulation provides that leave without pay "extends from the time an employee's leave commences until he/she is scheduled to return to continuous service". WAC 251-22-200(3). This language indicates that leave without pay extends from the beginning of the first missed workday and continues, without interruption, until the day the employee returns to work. However, the regulation does provide that, upon the employee's request, the employing official and the personnel officer can agree that the leave will end on an earlier date.

Statutes relating to the same subject matter must be read together. *Nelson*, at 115. In this case, the University argues that the regulation regarding extension of probationary periods (WAC 251-19-050(2)) incorporates the regulation defining the duration of leave without pay (WAC 251-22-200(3)). For this reason, the University argues, the HEP Board's failure to address the latter regulation when interpreting the former constituted reversible error.

Jacobs, however, argues that extending the probationary period by nonworkdays makes no sense and that including nonworkdays is contrary to the common meaning of the term "leave", which relates only to workdays. She also argues that including nonworkdays does not further the purpose of probationary periods, which is to evaluate the employee's work performance. It makes sense, she argues, to extend the probationary period by missed workdays only, in order to make

up for days when the employer was unable to observe the employee.

 We conclude that the two regulations must be read together. The term "leave of absence without pay" as used in WAC 251-22-200(3) is substantially the same as the term "leave without pay" as used in WAC 251-19-050(2). "Leave of absence without pay" is clearly defined in WAC 251-22-200(3), and this definition should be given controlling effect. *See State v. Leek*, 26 Wn. App. 651, 655, 614 P.2d 209 (quoting 1A C. Sands, *Statutory Construction* § 27.02, at 310 (4th ed. 1972)), *review denied*, 94 Wn.2d 1022 (1980).

Furthermore, including both work and nonworkdays guarantees a full 6-month probationary period. For this reason, the University's interpretation better serves the goals of evaluating an employee's overall performance and reliability. Jacobs' interpretation, on the other hand, does not guarantee a full 6-month period of probation.[3]

To summarize, we hold that WAC 251-22-200(3), which sets the duration of leave without pay, contemplates a continuous time period that includes both work and nonworkdays. WAC 251-19-050(2) incorporates that definition. Reading the regulations together, it is clear that when a probationary employee misses more than 10 workdays, the probationary period should be extended by the sum of missed workdays and nonworkdays preceded by a missed workday.

We agree with Jacobs that regulations such as WAC 251-22-117, which limits the amount of available vacation leave, sick leave, and leave for emergency child care, clearly contemplate calculation on a workday basis.[4] However, in order

---

[3]The fact that the State extends probation for other, nonhigher education, employees by both work and nonworkdays lends credence to the University's argument that such a system makes sense.

[4]Likewise, the military leave statute provides for leave "*from such employment* for a period not exceeding fifteen days[.]" (Italics ours.) RCW 38.40.060. The court in *Washington Fed'n of State Employees v. State Personnel Bd.*, *supra*, held that this language clearly expressed an intent to calculate military leave on a workday basis. *Washington Fed'n*, at 309.

to ensure a full 6-month probationary period, the regulation in this case must be interpreted to include workdays *and* nonworkdays preceded by a missed workday. Accordingly, the order of the trial court is affirmed.

GROSSE, C.J., and WEBSTER, J., concur.

Review denied at 121 Wn.2d 1018 (1993).