# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARUP LABORATORIES, INC., FORMERLY KNOW AS ASSOCIATED GENERAL AND UNIVERSITY PATHOLOGISTS, INC., | No. 52349-3-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — ARUP Laboratories, Inc. appeals the trial court's determination that it is subject to Washington Business and Occupation (B&O) taxes for income derived from the testing of bodily fluid and tissue samples in Utah that it received from Washington medical providers. ARUP argues that it is excluded from paying B&O taxes because only "persons" are subject to the B&O tax and states are excluded from the applicable statutory definition of "persons." ARUP argues it is an "arm of the State of Utah and is therefore the State of Utah." For those reasons, ARUP argues it is not subject to the tax. ARUP also argues that if we determine that it is a "person" under the statute, the revenue from its Washington sales should be attributed to Utah rather than Washington.[1] We affirm.

---

[1] ARUP also makes various constitutional arguments that depend on us concluding it is an arm of the State of Utah. Based on our resolution of this issue, we need not address these arguments.

FACTS

ARUP is a pathology laboratory located in Utah. It receives bodily fluid and tissue samples from medical providers in all 50 states and performs tests on the samples. Medical providers ship the samples to Utah. The samples are not returned to the customer. The test results are sent securely through the internet. ARUP contracts with hospitals, clinics, and laboratories to provide testing services. ARUP occasionally sends one or more employees to Washington to train in specimen collection and transportation, and to encourage providers to use ARUP.

ARUP is a nonprofit corporation created by the Department of Pathology of the University of Utah School of Medicine.[2] The University of Utah (University)[3] is part of Utah's higher education system under Utah Code. ARUP's bylaws and articles of incorporation both state that the purpose of ARUP is to serve the University's educational and charitable purposes, and its income accrues to the State of Utah or the University to further those purposes.

ARUP is a component unit of the University, and the University is a component unit of the State of Utah.[4] The University makes changes to and approves the final budget of ARUP. The president of the University determines how much of the profit is payable and distributed to the University.

---

[2] It is incorporated pursuant to the Utah Revised Nonprofit Corporation Act (U.C.A) 1953 §16-6a-101.

[3] When referring to the University of Utah, it includes the University of Utah School of Medicine.

[4] A "component unit" is a financial accounting term used by the Government Accounting Standards Board to describe a legally separate entity like a nonprofit that is financially accountable to the government entity or whose relationship with the entity are such that exclusion would cause the entity's financial statements to be misleading or incomplete.

The University is the sole member of ARUP.[5] The Board of Directors, who control the management and direction of ARUP, consists of ten members, three of whom are representatives appointed by the president of the University, the chairman of the University Department of Pathology, and the president of ARUP. The majority of directors "shall be employees, officers, or trustees of the University of Utah." Clerk's Papers (CP) at 427. The remaining board members are non-University community members. Approximately 80 faculty members of the University oversee ARUP's laboratories, which employs roughly 3,000 technicians and support staff who are employees of ARUP but not the University. Approximately 15-20 medical students from the University work under supervision at ARUP.

ARUP maintains its own bank accounts and is not financially dependent on the University. It does not receive funding from the State of Utah. ARUP has historically paid settlements and judgments out of its own funds. ARUP's Chief Financial Officer (CFO) explained that there has never been a need for the State or the University to pay judgments because ARUP has always been capable of meeting the obligations, however, it is "conceivable that if ARUP . . . could not meet the obligation, that the university would . . . or the State of Utah." CP at 234.

ARUP filed an action against the Department of Revenue (DOR) seeking the refund of $713,920.19 in B&O taxes for the tax period from January 2013 to December 2016.[6] Both parties

---

[5] Utah nonprofits have members, which is the equivalent of a shareholder in a for-profit corporation.

[6] ARUP challenged an assessment of B&O taxes during the tax period January 2008 through December 2011 before the Board of Tax Appeals. *Associated Reg'l & Univ. Pathologists v. Dep't of Revenue*, No. 13-124, 2016 WL 3262421, at *3 (Wash. Bd. of Tax Appeals May 6, 2016). It used the same arguments that it makes here, and the board determined that the DOR had properly apportioned ARUP's income to Washington. *Associated Reg'l & Univ. Pathologists*, 2016 WL 3262421, at 5. ARUP did not appeal.

moved for summary judgment. The trial court denied ARUP's motion for summary judgment and granted DOR's motion for summary judgment. ARUP appeals.

ANALYSIS

I.      LEGAL PRINCIPLES

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 797, 123 P.3d 88 (2005).

We also review questions of statutory interpretation de novo. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007). The "fundamental objective" of statutory interpretation "is to ascertain and carry out the Legislature's intent." *Dept. of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Where a "statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. Such plain meaning "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. If "the statute remains susceptible to more than one reasonable meaning" after such inquiry, it is ambiguous and we must "resort to aids to construction, including legislative history." *Campbell & Gwinn*, 146 Wn.2d at 12.

The rules of statutory construction also apply to the interpretation of administrative regulations adopted pursuant to statutory authority. *Cannon v. Dep't of Licensing*, 147 Wn.2d 41, 56, 50 P.3d 627 (2002). In this context, appellate courts "interpret[ ] a WAC provision to ascertain

and give effect to its underlying policy and intent." *Cannon*, 147 Wn.2d at 56. "Rules and regulations are to be given a rational, sensible interpretation," and courts will not consider them "ambiguous simply because different interpretations are conceivable." *Cannon*, 147 Wn.2d at 56-57. As with statutes, courts do not generally apply canons of construction to unambiguous administrative regulations. *Cannon*, 147 Wn.2d at 57. Courts should, however, "avoid a literal reading of a provision if it would result in unlikely, absurd, or strained consequences." *Cannon*, 147 Wn.2d at 57.

"As a rule, '[a] definition which declares what a term "means" . . . excludes any meaning that is not stated.'" *Colautti v. Franklin*, 439 U.S. 379, 392 n.10, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979) (quoting 2A C. SANDS, STATUTES AND STATUTORY CONSTRUCTION § 47.07 (4th ed. 1978)); *State v. Leek*, 26 Wn. App. 651, 655, 614 P.2d 209 (1980).

II.      ARUP IS A PERSON UNDER B&O STATUTE

ARUP contends that it is an "arm of Utah"; therefore, it is the State of Utah. It further argues that because only persons, and not states, are subject to the B&O tax, ARUP is not subject to the tax. Br. of Appellant at 21. We disagree with ARUP.

Washington's B&O tax is "extremely broad." *Steven Klein, Inc. v. Dep't of Revenue*, 183 Wn.2d 889, 896, 357 P.3d 59 (2015). Under RCW 82.04.220(1), "There is levied and collected from every person that has a substantial nexus with this state . . . a tax for the act or privilege of engaging in business activities." Thus, the "'legislature intended to impose the [B&O] tax upon virtually all business activities carried on within the state.'" *Steven Klein, Inc.*, 183 Wn.2d at 896 (internal quotation marks omitted) (quoting *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000)).

Washington's B&O tax applies to "every person" engaging in business activities within the state. RCW 82.04.220(1). "'Person' or 'company', herein used interchangeably, means any individual, . . . corporation, . . . whether mutual, cooperative, fraternal, nonprofit, or otherwise and the United States or any instrumentality thereof." RCW 82.04.030.

ARUP agrees with DOR that as a nonprofit, it falls within the statutory definition of "person" under the B&O statute. However, ARUP also argues that because it is an arm of the State of Utah, it is excluded from the definition. ARUP argues that "states" are excluded from the definition of "person." ARUP's argument ignores the undisputed, material fact that the University chose to organize ARUP as a nonprofit corporation, and it was not created as an agency of the State of Utah.

The definition of "person" neither includes nor excludes "states." RCW 82.04.220(1). ARUP argues that because the definition declares what "person" means, under *Colautti*, "it 'excludes any meaning that is not stated.'" 439 U.S. at 392 n.10 (quoting 2A C. SANDS, STATUTES AND STATUTORY CONSTRUCTION § 47.07). ARUP's reasoning means that a state is not a person subject to the B&O tax.

ARUP relies on two cases to support its argument that it is an arm of the State of Utah. Both cases are distinguishable from the present situation because they involve different factual situations and different statutes.

In the first case, *Hontz v. State*, 105 Wn.2d 302, 714 P.2d 1176 (1986), multiple individuals sued Harborview Medical Center and other defendants, alleging that they had been deprived of their civil rights under 42 U.S.C. § 1983. Section 1983 does not define "person," but the Supreme Court has held that "person" does not include a state. *Edgar v. State*, 92 Wn.2d 217, 222, 595 P.2d 534 (1979), *cert. denied*, 444 U.S. 1077 (1980). The State is not suable under section 1983. *Hontz*,

6

105 Wn.2d at 309. The uncontroverted evidence showed that the University of Washington (UW), a state agency, operated and managed Harborview, and that UW employed all of Harborview's employees. A fund held by the state treasurer paid claims against Harborview. *Hontz*, 105 Wn.2d at 310. The suit was "in legal effect a suit against the State" and could not be maintained. *Hontz*, 105 Wn.2d at 310.

Here, during the relevant tax period, ARUP's Board of Directors, who control the management and direction of ARUP, consisted of ten members, a majority of whom were employees, officers or trustees of the University. However, the employees of ARUP are not all employees of the University. Only approximately 80 faculty members of the University oversee the laboratories. The laboratories are staffed by roughly 3,000 technicians and support staff who are employees of ARUP, not the University.

In regard to liability, ARUP has historically paid settlements and judgments out of its own funds. ARUP's CFO explained that there has never been a need for the state or the University to pay judgments because ARUP has always been capable of meeting the obligations, however, it is "conceivable that if ARUP . . . could not meet the obligation, that the university would . . . or the State of Utah." CP at 234. There is no evidence in ARUP's articles of incorporation, bylaws, or other parts of the record that the University or the State of Utah would be liable for any judgment against ARUP. Liability of the medical directors is covered under the University's plan, but liability for ARUP's employees are covered under its own insurance plan. The key facts that the court relied on in *Hontz* to determine that Harborview was an arm of the State of Washington are missing here.

ARUP also relies on *Hyde v. University of Washington Medical Center*, 186 Wn. App. 926, 347 P.3d 918 (2015), where the court determined that the Association of University Physicians

7

(UWP), a nonprofit corporation created by the UW School of Medicine, was an arm of the State of Washington. The court reversed an order denying summary judgment under the tort claim statute, RCW 4.92.100 and .110. *Hyde*, 186 Wn. App. at 937. The court determined that the UW School of Medicine, a state agency, controlled UWP. UWP was created to serve the purposes of the UW School of Medicine. *Hyde*, 186 Wn. App. at 927. UWP provided physician services in hospitals owned and operated by the UW. UWP's members are UW faculty members. *Hyde*, 186 Wn. App. at 929.

The court also looked at several factors. First, the articles of incorporation, bylaws and operating agreement demonstrated that UWP was a nonprofit corporation created for the benefit of the UW School of Medicine. Its principal and income were devoted exclusively to that purpose. *Hyde*, 186 Wn. App. at 931. Second, a board of trustees managed and directed UWP. The board consisted of the chair of each department at the UW School of Medicine and a minority of community members appointed by the dean of the medical school. *Hyde*, 186 Wn. App. at 931. When UWP is dissolved, all of its remaining assets would go to the UW. *Hyde*, 186 Wn. App. at 931. Third, all UWP physicians were UW faculty members and employees. They were agents of UW for professional liability purposes. *Hyde*, 186 Wn. App. at 933-34. The court emphasized the liability aspect in making its determination.

Finally, the court stated that UWP's status as a separate non-profit corporation did not preclude it from being considered an arm of the state. *Hyde*, 186 Wn. App. at 934. The court relied on *Good v. Associated Students of the University of Washington*, 86 Wn.2d 94, 97, 542 P.2d 762 (1975). In that case, the court determined that Associated Students of the UW, a separate nonprofit corporation, was an arm and agency of the UW. *Good*, 86 Wn.2d at 97. It was an arm

and agency of the UW because it was subject to the ultimate control by the UW Board of Regents. *Good*, 86 Wn.2d at 98.

Here, ARUP's bylaws and articles of incorporation both state that the purpose of ARUP is to serve the University's educational and charitable purposes, and its income accrues to the State of Utah or the University to further those purposes. The University is the sole voting member of ARUP. The composition of ARUP's Board of Directors is similar to that of UWP. However, in regard to the day-to-day operation of ARUP, the majority of employees of ARUP are not employees of the University. In regard to liability, ARUP pays settlements and judgments out of its own funds.

Many of the factors relied on in *Hyde* and *Hontz* are not present in this case. Unlike there, ARUP, and not the State of Utah, is responsible for liability in the case of legal actions. Unlike there, ARUP has employees who are not employees of the state. We conclude that ARUP is not an arm of the state, like Harborview in *Hyde* or UWP in *Hontz*. ARUP is a person subject to the B&O tax.

III.    ARUPs WASHINGTON REVENUE

ARUP contends that the samples it tests are tangible personal property for tax purposes; therefore, the benefit of the service is located where the tangible personal property is located or "where the place of principal use occurs." Br of Appellant at 14 (quoting WAC 458-20-19402(303)(b)). It cites the fact that "testing of the tangible personal property" is included as part of a non-exclusive list of services that relate to tangible personal property under WAC 458-20-19402(303)(b). Br. of Appellant at 14. Therefore, ARUP argues the revenue from testing samples in Utah that are sent by Washington customers should be attributed to Utah.

9

DOR contends that the regulation must be read in the context of RCW 82.04.462 because WAC 458-20-19402 was promulgated to help taxpayers assess where the benefit of the service is received. It argues that in promulgating the regulation, DOR intended the "testing of tangible personal property" example to "describe services where the benefit the customer receives is the use or enjoyment of the [property] being tested." Br. for Resp't at 26. Therefore, the benefit of the service is the information received from the testing services, not the sample itself. We agree with DOR.

A.      Legal Principles

Washington imposes the B&O tax "for the act or privilege of engaging in business activities" here. RCW 82.04.220; *Lamtec Corp. v. Dep't of Revenue*, 170 Wn.2d 838, 843, 246 P.3d 788 (2011). The statute requires "every person" who has a substantial nexus with this state and who conducts activities here "with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly" to pay a percentage of the gross receipts of the resulting sales. RCW 82.04.220; RCW 82.04.140; *Lamtec*, 170 Wn.2d at 843.

To determine the amount of B&O tax owed, DOR uses an apportionment formula.[7] One of the important parts of the formula is "the total gross income of the business of the taxpayer attributable to [Washington] during the tax year from engaging in an apportionable activity."

---

[7] The DOR explained how the apportionment formula works as follows: "Single factor apportionment formula" multiplies a person's "apportionable income" by its "receipts factor." RCW 82.04.462(1). The "receipts factor" is a fraction where the numerator is the gross income of the business attributed to Washington during the tax year, and the denominator is the total gross income of the business worldwide during the tax year. RCW 82.04.462(3)(a). To determine the numerator of the receipts factor, i.e., the amount of gross income to attribute to Washington, the legislature provides that the "gross income of the business generated from each apportionable activity is attributable to the state . . . [w]here the customer received the benefit of the taxpayer's service." Br. of Resp't at 17 (quoting RCW 82.04.462(3)(b)(i)).

RCW 82.04.462(3)(a). The statute explains that a taxpayer's "apportionable activity is attributable to the state . . . [w]here the customer received the benefit of the taxpayer's service." RCW 82.04.462(3)(b)(i). Customer is defined as the "person or entity to whom the taxpayer makes a sale or renders services or from whom the taxpayer otherwise receives gross income of the business." RCW 82.04.462(3)(b)(viii).

Guidance on "where the taxpayer's customer receives the benefit of the service" is provided in WAC 458-20-19402. The parties refer to this regulation as "Rule 19402." The regulation states in relevant part:

> (303) Benefit of the service explained. . . . This subsection explains the framework for determining where the benefit of a service is received.
> . . . .
> (b) If the taxpayer's service relates to tangible personal property, then the benefit is received where the tangible personal property is located or intended/expected to be located.
>> (i) Tangible personal property is generally treated as located where the place of principal use occurs . . .
>> . . . .
>> (iii) The following is a nonexclusive list of services that relate to tangible personal property:
>>> . . . .
>>> (C) Inspections of the tangible personal property;
>>> (D) Testing of the tangible personal property;
> . . . .
> (c) If the taxpayer's service does not relate to real or tangible personal property, the service is provided to a customer engaged in business, and the service relates to the customer's business activities, then the benefit is received where the customer's related business activities occur.
>> . . . .
> (d) If the taxpayer's service does not relate to real or tangible personal property, is either provided to a customer not engaged in business or unrelated to the customer's business activities; and:
>> . . . .

(iii) If (d)(i) and (ii) of this subsection do not apply, the benefit of the service is received where the customer resides. The following is a nonexclusive list of services whose benefit is received at the customer's residence:

. . . .

(D) Blood tests (not blood drawing).

WAC 458-20-19402.

B.      Where is the benefit of ARUP's service received?

ARUP argues that if we determine that it is subject to the B&O tax, the regulations require that the income from Washington customers be apportioned to Utah in the apportionment formula. DOR argues that the income should be apportioned to Washington. We agree with DOR.

At issue is the interpretation of RCW 82.04.462(3)(b)(i) which reads, in pertinent part, "apportionable activity is attributable to the state . . . [w]here the customer received the benefit of the taxpayer's service." A person earning "apportionable income" that is taxable both in Washington and another state must apportion to Washington the amount that person derived from business activities performed within Washington. "Apportionable income" means gross income of the business generated from engaging in activities falling within the "services" classification under the B&O tax classification. RCW 82.04.460(4)(a); RCW 82.04.290. ARUP does not dispute that it earned "apportionable income," which is the laboratory services provided to Washington customers. However, neither the statute nor any regulation defines "benefit."

"An undefined term is 'given its plain and ordinary meaning unless a contrary legislative intent is indicated.'" *State v. Donaghe*, 172 Wn.2d 253, 262, 256 P.3d 1171 (2011) (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)). To determine the plain meaning of an undefined term, we may look to the dictionary. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). Black's Law Dictionary

12

defines benefit as "The advantage or privilege something gives; the helpful or useful effect something has." Black's Law Dictionary (11th ed. 2019).

To determine to which state the income ARUP received from its Washington customers should be apportioned, we must determine where ARUP's customers receive the helpful or useful effect of its services. ARUP's services assist medical providers in diagnosing their patients. The medical providers cannot diagnose their patients until they receive the results of the tests they ordered from ARUP. Therefore, we agree with DOR and conclude that the benefit is received where the medical provider is located, which is in Washington.

This interpretation is consistent with the legislature's intent in creating the B&O tax as well as the 2010 changes to the apportionment method. "'[T]he legislature intended to impose the [B&O] tax upon virtually all business activities carried on within the state,' and to 'leave practically no business and commerce free of . . . tax.'" *Simpson Inv. Co.*, 141 Wn.2d at 149 (citation omitted) (quoting *Time Oil Co. v. State*, 79 Wn.2d 143, 146, 483 P.2d 628 (1971) and *Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 175, 500 P.2d 764 (1972)). Additionally, the legislature changed to a single factor apportionment formula specifically to reach entities like ARUP.[8] "The express purpose of the change in the law was to

---

[8] The apportionment formula determines how much tax a company that does business in multiple states has to pay to Washington. The previous and more traditional method of apportionment was a three-factor apportionment. When the three factor apportionment formula was applied to the income of a company that was located outside of Washington and that provided a service (as opposed to product manufacturing) to a Washington customer, the income from that service was normally apportioned to the state where the company was located. This means that there was very little (or no) tax paid by the company to Washington. A single factor apportionment formula, on the other hand, apportions the income of the company to where the benefit of the services is received, rather than where the company providing the services is located. With this method, more tax is paid to Washington where the income originated. *See* Giles Sutton et al., *The Increasingly Complex Apportionment Rules for Service-Based Business: Basic Issues* (pt. 1), J. MULTISTATE TAX'N & INCENTIVES, Oct. 2007, at 24, 26, 2007 WL 3201540, *2.

require businesses 'earn(ing) significant income from Washington residents from providing services' to 'pay their fair share of the cost of services that this state renders and the infrastructure it provides.'" WAC 458-20-19402 (quoting LAWS OF 2010, 1st spec. sess., ch. 23, § 101). Because ARUP earns a significant amount of income from serving Washington residents, specifically medical providers located in Washington, we conclude that the legislature intended to tax out-of-state entities like ARUP.

C.     Do ARUPs Services Relate to Tangible Personal Property?

ARUP argues that we must look to WAC 458-20-19402, to determine where the benefit is received. It argues that the specimen samples are tangible personal property for tax purposes; therefore, the benefit of the service is located where the tangible personal property is located or "where the place of principal use occurs." Br of Appellant at 14.

DOR argues that both RCW 82.04.462 and WAC 458-20-19402 confirm that the benefit of the service from ARUP is received in Washington and the revenue should be apportioned to Washington. We agree with DOR.

The regulation and the statute can be read consistent with each other. Section 303(b) of the regulation applies when "the taxpayer's service relates to tangible personal property," and is meant to describe services where the benefit that the customer receives is in the use or enjoyment of the property. The regulation gives detailed examples of services, including testing, that are related to tangible personal property. WAC 458-20-19402(304)(b). All of the examples describe the use of widgets, tools and equipment. The services related to these items of property facilitate the use and enjoyment of the property. Unlike testing of tools and widgets, the purpose of the service provided by ARUP is to provide the results of the testing, rather than the use and enjoyment

14

of the property. For this reason, the samples are not sent back to the customers after the testing is complete, but reports on the results are sent to the medical providers.

Section 303(c) of the regulation applies when "the taxpayer's service does not relate to real or tangible personal property." WAC 458-20-19402(303)(c). This section includes the services that "involve" the use of tangible personal property, but the benefit received is the result produced by the service, not the use or enjoyment of the property. The benefit received from ARUPs services is the result, not the use or enjoyment of the specimens.

This characterization of ARUP's services is also consistent with section 303(d), which applies "[i]f the taxpayer's service does not relate to real or tangible personal property [and] is either provided to a customer not engaged in business or unrelated to the customer's business activities." WAC 458-20-19402(303)(d). Included under this section in a "nonexclusive list of services whose benefit is received at the customer's residence," is "Blood tests (not blood drawing)." WAC 458-20-19402(303)(d).

Blood testing is listed as a part of a category of service that "does not relate to real or tangible personal property," for customers not engaged in business. WAC 458-20-19402(303)(d). It should be similarly considered for customers engaged in business. The purpose of conducting blood tests is to receive results, whether or not the customer is a medical provider in the business of diagnosing patients or an individual seeking test results. We therefore determine that the benefit of ARUP's services to Washington customers should be attributed to Washington under both RCW 82.04.462 and WAC 458-20-19402(303)(c).

52349-3-II

We affirm.

_____
Melnick, J.

I concur:

_____
Lee, J.

16

52349-3-II

MAXA, C.J. (dissenting in part) – I agree with the majority opinion that ARUP Laboratories, Inc. is a "person" for purposes of the Washington Business and Occupation (B&O) tax. But I disagree that ARUP is subject to Washington B&O taxes for income derived from testing in Utah of bodily fluid and tissue samples received from Washington customers.

RCW 82.04.462(3)(b)(i) states that income for B&O tax purposes is attributable to the state where "the customer received the benefit of the taxpayer's service." But for a service like the testing of bodily fluid and tissue samples, it is unclear where the benefit of the testing is received. Is the benefit received in Utah, where the samples are used to perform testing and the usable results are obtained, especially since the samples are not returned to Washington? Or is the benefit received in Washington, where the test results are used in diagnosis and treatment? RCW 82.04.462(3)(b)(i) provides no assistance in resolving this issue.

However, the Department of Revenue (DOR) adopted WAC 458-20-19402 (Rule 19402), which in subsection (303) "explains the framework for determining where the benefit of a service is received." Subsection (303)(b) states, "If the taxpayer's service relates to tangible personal property, then the benefit is received where the tangible personal property is located or intended/expected to be located." Subsection (303)(b)(i) states, "Tangible personal property is generally treated as located where the place of principal use occurs."

Here, the bodily fluid and tissue samples clearly are tangible personal property. And there is no question that the samples are located and will remain located in Utah and that Utah is the place the samples are used. DOR emphasizes that the test *results* are sent to Washington and used in Washington. But the *samples* clearly remain in and are used in Utah. Therefore, subsection (303)(b)(i) suggests that the benefit of ARUP's testing was received in Utah.

17

Further, there is no question that subsection (303)(b) of Rule 19402 applies here. Subsection (303)(b)(iii) provides a "nonexclusive list of services that relate to tangible personal property." This list includes "(D) Testing of tangible personal property." ARUP's testing of bodily fluid and tissue samples unequivocally constitutes the "[t]esting of tangible personal property."

Both DOR and the majority opinion try to explain away subsection (303)(b), but I believe that their attempts are unsuccessful. Subsections (303)(b) and (303)(b)(i) could not be more clear: (1) testing of tangible property is a service that relates to tangible personal property, (2) for such service the benefit is received where the tangible property is located, and (3) tangible personal property is located where the principal use occurs. DOR drafted and adopted this regulation, and DOR cannot now claim that we should not follow its provisions.

I would hold that ARUP is not subject to Washington's B&O taxes for income derived from testing in Utah of bodily fluid and tissue samples received from Washington customers.

_____
Maxa, C.J.

18